(No. 57847.—

EILEEN HEINRICH, Special Adm'r, v. PEABODY IN-
TERNATIONAL CORPORATION *et al.* (San-Dee
Building Maintenance Company, Appellant, v. Brook-
shore Lithographers, Inc., Appellee).

*Opinion filed January 20, 1984.*

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton, Craig M. White, and Thomas E. Patterson, of counsel), for appellant.

Sweeney and Riman, Ltd., of Chicago (Kevin F. Donohue, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

This case is before us on the appeal of San-Dee Building Maintenance Company (San-Dee), one of three defendants in a wrongful death action brought by Eileen Heinrich, from the dismissal of a portion of its third-party complaint against Brookshore Lithographers, Inc. (Brookshore), a party not named in the original action.

The plaintiff's decedent was an employee of Brookshore at the time of his death. According to plaintiff's complaint filed in the circuit court of Cook County, he was working on a trash compactor on Brookshore's premises when Ignacio Ayala, a janitor for San-Dee who was performing work at the Brookshore plant, activated the compactor, causing his death by decapitation. The complaint alleged that Ayala was acting as San-Dee's agent at the time of the incident, that Ayala was negligent in his operation of the machine and in failing to make certain that nobody was working on it before activating it, and that San-Dee was negligent in its hiring, training and supervision of its employees. In another count plaintiff alleged that certain

defects in the compactor of which the manufacturer was or should have been aware rendered it unreasonably dangerous, and that its dangerous propensities were the direct and proximate cause of the decedent's death. This allegation was incorporated into the count charging Ayala and San-Dee with negligence.

San-Dee denied the charges of negligence and filed a third-party action against Brookshore seeking contribution and indemnification. In support of its claim for indemnity it alleged that Brookshore was engaged in the business of salvaging and selling paper scrap from its printing operations, that Brookshore had arranged with San-Dee to use certain of its employees to assist in this salvage operation, that Ayala was "loaned" to Brookshore pursuant to this agreement and was working under Brookshore's supervision at the time of the accident, that Brookshore owned and maintained the compactor which caused the death, and that Brookshore was negligent in failing to discover and warn of the unsafe condition of the machine, prohibit unrestricted access to the machine during work hours, provide adequate warning of the presence of men working on the machine and restrict access accordingly, label the machine's switches and power controls in a proper manner, and provide adequate training and supervision to the workers who used the machine. Although the third-party complaint was divided into only two counts, we construe it to allege three separate grounds of recovery from Brookshore: first, a right of contribution; second, implied indemnity under the common law alleging a pre-tort relationship and active negligence on the part of Brookshore; and third, that the allegedly negligent employee (Ayala) was a servant loaned by San-Dee to Brookshore and thus Brookshore was responsible for his conduct.

Brookshore filed a motion to strike the latter two portions of San-Dee's complaint, arguing that the complaint revealed no basis for indemnity and that Ayala's status as

a "loaned servant" should have been pleaded as an affirmative defense to the original complaint rather than as a basis for a third-party action. The trial court agreed with the latter contention, but instead of addressing the former it dismissed the count on the ground that after this court's decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, and the subsequent enactment of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) indemnity was no longer viable in Illinois. It certified that there was no just reason for delaying enforcement or appeal. (87 Ill. 2d R. 304(a).) However, the appellate court, in a Rule 23 order (87 Ill. 2d R. 23), dismissed San-Dee's appeal on jurisdictional grounds (110 Ill. App. 3d 1198), ruling that, inasmuch as the claim for contribution was left standing, the dismissal of the other third-party claims was not a final, appealable order. We granted San-Dee's petition for leave to appeal.

The dismissal of a single count of a complaint containing multiple counts is not always appealable, as the appellate court pointed out. (See *Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622.) Nevertheless, this court has held that when the bases for recovery under the counts that are dismissed are different than those under the counts left standing, the dismissal is appealable because it disposes of a distinct cause of action. (*Cunningham v. Brown* (1961), 22 Ill. 2d 23, 25.) This may occur when the grounds for recovery under the various counts derive from different statutes or common law doctrines (*Cunningham v. Brown*) or when the various theories of recovery require "different elements *** to establish a proper claim" or involve "differing standards of plaintiff's conduct which will bar recovery" (*Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 891).

In this case the appellate court determined that contribution and indemnification were not distinct causes of

action because both were predicated on the same theory of recovery. We do not agree. Contribution in Illinois is a statutory remedy which involves a sharing of payment of damage awards and is available to all parties who are "subject to liability in tort arising out of the same injury *** or the same wrongful death" (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)). Indemnity, on the other hand, is a common law doctrine providing for the complete shifting of liability on a showing that there was a pre-tort relationship between the guilty parties and a qualitative distinction between their conduct. *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 231-32; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 613.

The elements of contribution and indemnification are different. A claimant seeking the former need show only a common injury which his acts and those of the contributor combined to bring about and which makes them subject to liability in tort (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)), while one seeking the latter must show a pre-tort relationship with the indemnitor and some significant difference in the nature of their respective conduct which justifies a shifting of liability. The measure of recovery is different: indemnity is all or nothing, while absent inability to respond in damages by other culpable parties, no party is liable to make contribution beyond his *pro rata* share of the common liability as measured by the extent to which his acts or omissions, whatever their nature, proximately caused the injury (Ill. Rev. Stat. 1979, ch. 70, par. 303; Dowd, *Questions Under Comparative Negligence Law*, 65 Chi. B. Rec. 98, 102 (1983)). In addition, the absence of a qualitative difference in the nature of the conduct of the guilty parties will defeat a claim for indemnification (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 449), while it is not fatal to a claim for contribution, except, perhaps, where made so by a statute creating a special standard of conduct and absolute liability for its breach. In short, contribution and indemnification are dis-

tinct theories of recovery, and an order dismissing a count seeking either one is not rendered unappealable by the survival of a count seeking the other. In addition, even though the third ground for recovery alleged by San-Dee, the loaned-servant doctrine, was set forth as part of the claim seeking indemnification, it is distinct from both indemnification and contribution, as we explain below.

Brookshore argues that the indemnity count was properly dismissed insofar as it depends on active and passive negligence, for no set of facts is alleged in the complaint which would support a finding that it was actively negligent while San-Dee was passively negligent. Neither the trial court nor the appellate court reached this issue.

We do not deal with this contention, for it presupposes the continued vitality of the traditional doctrine of indemnification. The trial court's holding, which the appellate court did not address in its Rule 23 order, was that indemnity no longer existed in the law of this State in view of the Contribution Among Joint Tortfeasors Act and the decisions of this court, under which contribution replaced rather than supplemented indemnification as a vehicle for resolving multiparty claims. We believe that this issue, which has been the subject of scholarly comment (Anich, *Implied Indemnity After Skinner and the Illinois Contribution Act: The Case for a Uniform Standard*, 14 Loy. U. Chi. L.J. 531 (1983); Appel and Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative and Judicial Cooperation*, 10 Loy. U. Chi. L.J. 169, 192-93 (1979); Ferrini, *The Evolution from Indemnity to Contribution—A Question of the Future, If Any, of Indemnity*, 59 Chi. Bar Rec. 254 (1978)) and at least one reported decision in this State (*Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 612-13), is an important one which awaits resolution in light of the developing law regarding the role of contribution in Illinois. In view of the fact that the parties have not taken an adversary position on the issue in this

case, we decline to attempt to resolve it ourselves but remand the cause to the appellate court with instructions to consider this important issue before addressing the sufficiency of the pleadings.

We turn next to the other issue on which the circuit court focused, namely whether a defendant in a tort action based on a *respondeat superior* theory may invoke the "loaned servant" doctrine for the first time in an indemnity action rather than as a defense to liability in the original lawsuit. Brookshore argues that indemnification requires not only that the third-party plaintiff and defendant have a pre-tort relationship but also that they both be liable to the original plaintiff. It argues that if Ignacio Ayala was acting as the agent of Brookshore at the time of the accident he would not have been acting as San-Dee's agent, and therefore San-Dee would not have been liable to the plaintiff and could not raise a claim for indemnification.

We agree that under the common law of this State indemnity could not operate unless the third-party claimant were found liable to the original plaintiff and compelled to pay a judgment. (See 21 Ill. L. & Prac. *Indemnity* sec. 43 (West 1977).) From this perspective it is imprecise to regard San-Dee's loaned-servant allegation as an indemnity claim where it would have been a complete defense to its liability had San-Dee raised it successfully in the original lawsuit. The loaned-servant doctrine is not basically a theory of indemnity, but rather expresses the maxim of agency law that an agent of one master may be loaned to another and become the servant of the second master rather than the first for the special purposes for which he is loaned. (See *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 832; 53 Am. Jur. 2d *Master and Servant* sec. 415 (1970); Restatement (Second) of Agency sec. 227 (1958).) The only parallel between this doctrine and indemnity or contribution is that to the extent that a loaned servant is the agent of the second principal

he is not the agent of the first.

We do not believe, however, that San-Dee's loaned-servant allegation fails to state a third-party cause of action or that it should be dismissed merely because styling it as "indemnity" is logically confusing. If San-Dee's allegations concerning Ayala's status are correct, the result will be the shifting of its liability to the party who was actually responsible for the negligent behavior of Ayala if any occurred, and the avoidance of such liability by a party which was not responsible. This is a just result which should not be frustrated by rigid requirements of form in pleading as long as the third-party plaintiff sets forth facts in its complaint sufficient to put the other parties clearly on notice of the nature of its claim, as San-Dee has done here. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 17; *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145; Ill. Rev. Stat. 1979, ch. 110, pars. 33(3), 42(2).) The Supreme Court of the United States has entertained a loaned-servant claim in a suit for indemnity (*George A. Fuller Co. v. Otis Elevator Co.* (1918), 245 U.S. 489, 62 L. Ed. 422, 38 S. Ct. 180), and this court has hinted, albeit in *dictum,* that such a procedure would be proper (*John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 340). In fact, this procedure makes more sense than introducing a loaned-servant contention as a defense to the original lawsuit without bringing the "borrowing employer" into the litigation. If the defendant who chooses the latter route succeeds in establishing that the employee who caused the plaintiff's injury was loaned to another party, the plaintiff would then be free to seek recovery from that party, which in turn would be free to defend such an action on the ground that the servant was not loaned to him. Raising the argument in a third-party complaint rather than as a defense would avoid this waste of judicial resources and potential for inconsistent results, and it would assure the plaintiff of a recovery upon showing that the servant in

question committed a negligent act which proximately caused the injuries and that, as between the defendant and the third party, he was the agent of one of them.

The determination of the appellate court that the dismissal of the indemnity count was not appealable is reversed. The cause is remanded to the appellate court for action consistent with the views expressed in this opinion.

*Reversed and remanded.*