MARCUS BATTEAST *et al.*, Plaintiffs, v. ST. BERNARD'S HOSPITAL *et al.*, Defendants (Wyeth Laboratories, Inc., *et al.*, Third-Party Plaintiffs and Counterplaintiffs-Appellants, v. St. Bernard's Hospital, Third-Party Defendant-Appellee (E. Dela Cruz, M.D., Counterdefendant-Appellee)).

First District (4th Division)   No. 83—2298

Opinion filed July 3, 1985.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan and John P. Prusik, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John G. Langhenry, Stephen R. Swofford, and Joanna C. New, of counsel), for appellee St. Bernard's Hospital.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellee E. Dela Cruz.

JUSTICE LINN delivered the opinion of the court:

Wyeth Laboratories, Inc. (Wyeth), appeals from the orders of the Cook County circuit court which dismiss with prejudice its counterclaim against St. Bernard's Hospital (St. Bernard) for failure to state a claim for indemnification, denied its motion for leave to file an amended counterclaim against St. Bernard, and denied its motion for leave to file a counterclaim against Dr. Dela Cruz (Dela Cruz). Wyeth raises three issues for review.

First, Wyeth contends that its counterclaims against St. Bernard and Dela Cruz stated a claim for partial indemnification based upon the doctrine of equitable apportionment.

In addition, although Wyeth concedes in this appeal that it cannot seek contribution from St. Bernard and Dela Cruz since the plaintiff's alleged injury occurred prior to March 1, 1978, the applicable date of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and the Contribution Among Joint Tort-

feasors Act (the Contribution Act) (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*), Wyeth contends that in light of recent Illinois Supreme Court decisions it nevertheless should be permitted to apply the principles of comparative fault on which *Skinner* and the Act are founded to its indemnity claims. As we understand Wyeth's argument, it seeks, essentially, neither contribution *per se* nor indemnity *per se*, but rather a hybrid of these two. For purposes of differentiation and clarity, we will characterize this theory as one of "comparative indemnification."

In that context, then, Wyeth's second contention is that its counterclaims against St. Bernard and Dela Cruz stated a claim for such "comparative indemnification" to the extent that St. Bernard and Dela Cruz allegedly engaged in actively negligent and careless conduct for which Wyeth might be held liable under a theory of strict product liability or negligence.

Wyeth's final argument is that its counterclaims against St. Bernard and Dela Cruz stated a claim for "comparative indemnification" to the extent that St. Bernard and Dela Cruz allegedly engaged in wilful and wanton misconduct for which Wyeth might be held liable under a theory of strict product liability or negligence.

We affirm.

BACKGROUND

This action began when the parents of Marcus Batteast filed a complaint in several counts on his behalf. The pleading sought recovery for severe and irreparable brain damage he allegedly sustained as a result of his ingestion of the drug aminophylline (manufactured by Wyeth) while he was a patient at St. Bernard and under the care of Dela Cruz. It alleged that Marcus was 2½ years old at the time of his stay in the hospital, from approximately February 5 through February 10, 1976. According to the complaint, his ingestion of the drug by suppository caused him to go into convulsions and eventually slip into a coma; this in turn resulted in brain damage such that he would never develop beyond his capacity at the time the injury was sustained.

Marcus' parents first filed suit against St. Bernard and Dela Cruz (and others not parties to this appeal) on June 29, 1977. As subsequently amended on June 11, 1982, the complaint alleged *inter alia* that the hospital's mistreatment of Marcus was wilful and wanton (count I) and negligent and careless (count II), and that Dela Cruz' mistreatment of Marcus was negligent and careless (count III).

The Batteasts' complaint against Wyeth (and others not parties to

this appeal) was filed on July 18, 1980. As amended on November 5, 1982, it sought damages from Wyeth based on strict product liability for inadequate product packaging and marking (count I), wilful and wanton failure to adequately warn of adverse side effects (count II), and negligent failure to adequately warn of adverse side effects (count III).

Wyeth filed a third-party complaint against St. Bernard on February 9, 1981. In it Wyeth requested full or partial indemnification for any damages assessed against Wyeth on the ground that the hospital negligently administered the drug aminophylline to Marcus and negligently cared for him when he began to have adverse reactions to the drug. Subsequent to Wyeth's filing of this complaint the trial court consolidated the Batteasts' claims against Wyeth, St. Bernard, and Dela Cruz. Wyeth's third-party action essentially became a counterclaim by virtue of this consolidation, and it will be referred to as such throughout this opinion for the sake of clarity.

St. Bernard filed a motion to dismiss the counterclaim for failure to state a claim on May 26, 1983. The trial court granted the motion and dismissed the counterclaim with prejudice on August 22. The court determined that Wyeth could not recover from St. Bernard based on a theory of contribution because the child's injury occurred before March 1, 1978, and thus did not fall within the purview of *Skinner* and the Contribution Act. It further found that Wyeth could not recover under the doctrine of equitable apportionment because the injury sustained was indivisible. Lastly, it held that Wyeth could not recover based upon indemnification because of its negligent acts, if any, would be active as a matter of law and because its liability based on strict product liability, if any, would preclude its recovery from a downstream user of its products as a matter of law.

A few weeks later Wyeth sought leave to file an amended counterclaim against St. Bernard and a counterclaim against Dela Cruz. In both of these documents Wyeth sought indemnification based upon contribution (count I), equitable apportionment (count II), and "comparative indemnification" (as we have denominated the theory) for the parties' negligent or wilful and wanton misconduct as compared to Wyeth's liability, if any, based upon strict product liability or negligence (count III). Although Wyeth stated in greater detail the conduct of St. Bernard and Dela Cruz which it claimed to amount to either negligent or wilful and wanton behavior, it did not otherwise substantially deviate from the counterclaim which the trial court had dismissed with prejudice. The trial court denied leave to file both documents in separate orders. The court's findings and conclusions were

substantially similar to those in support of its dismissal with prejudice of Wyeth's original counterclaim. Wyeth's timely appeal followed.

OPINION

■■ Since this appeal is taken from orders which granted the defendants' motions to dismiss or deny leave to amend, all well-pleaded facts are assumed to be true for the purposes of determining whether Wyeth's counterclaims failed to state a claim. (*Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 129-30, 448 N.E.2d 591.) Additionally, dismissal on this basis will be deemed appropriate only if it is manifest that no set of facts could be proven upon which relief could be granted. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 157-58, 435 N.E.2d 463.) Further, the trial court will be determined to have abused its discretion if it denied leave to file an amended counterclaim which would state a claim under these standards. *McEarlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 1149, 414 N.E.2d 128.

### EQUITABLE APPORTIONMENT

Wyeth argues that the trial court committed reversible error in dismissing its counterclaim against St. Bernard and denying it leave to file a similar counterclaim against Dela Cruz. Wyeth urges that the trial court erred in concluding that the doctrine of equitable apportionment did not apply because Marcus' injuries were indivisible.

■■ Equitable apportionment stands upon the "principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him." (*Gertz v. Campbell* (1973), 55 Ill. 2d 84, 90, 302 N.E.2d 40.) Nevertheless, the doctrine applies only where the defendants have committed independent and successive torts. *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40.

■■ Several factors are generally required in order for equitable apportionment to apply, including (1) the original tortfeasor is liable at law for the subsequent negligence of the other; (2) the parties are not joint tortfeasors; (3) they did not act in concert; (4) the wrongful conduct and injuries were sustained at different times; and (5) the original tortfeasor lacked control over the acts of the subsequent tortfeasor. *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 911, 443 N.E.2d 626; see *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 91-92, 302 N.E.2d 44.

■■ Thus, partial indemnification based upon equitable apportion-

ment does not obtain where the defendants stand in relation to each other as joint tortfeasors. (*Old Second National Bank v. Bynal Products, Inc.* (1979), 79 Ill. App. 3d 432, 435, 398 N.E.2d 626.) "Indivisibility of the resultant injury is the test of jointness." (*Erickson v. Gilden* (1979), 76 Ill. App. 3d 218, 219, 394 N.E.2d 1076.) "It has long been the law in this State that where two or more persons directly produce a single, indivisible injury by their own negligence, they are jointly and severally liable even though there was no common duty, common design, or concerted action. [Citations.]" *Millburn Mutual Insurance Co. v. Glaze* (1980), 86 Ill. App. 3d 1055, 1065, 410 N.E.2d 295.

■ Wyeth contends that the injuries suffered by Marcus Batteast were divisible and independent. It claims that, conceding for purposes of argument, misconduct in providing adequate information, the original injury Marcus suffered from ingestion of aminophylline was at most "minimal unpleasant side effects." According to Wyeth, his injury was then exacerbated and exaggerated by the subsequent negligent or wilful and wanton misconduct of the hospital and Dela Cruz in their mistreatment of these "unpleasant side effects"; this mistreatment caused Marcus' irreparable brain damage. Wyeth maintains that it did not have nor could it have had any control over this subsequent misconduct committed by St. Bernard and Dela Cruz, and that it is therefore entitled to partial indemnification for those damages which may be assessed against it which resulted from their actions. St. Bernard and Dela Cruz argue that Marcus' injury was indivisible, that the parties are in the nature of joint tortfeasors, and that as a result the doctrine of equitable apportionment is inapplicable.

We agree with the trial court's conclusion that Wyeth's counterclaims failed to state a claim for equitable apportionment. In our view, Wyeth's contention fails to take into account that the alleged injuries sustained by Marcus for which it seeks indemnification from St. Bernard and Dela Cruz are substantially the same as those injuries about which Wyeth allegedly failed to adequately warn St. Bernard and its physicians to begin with. The Batteasts' complaint alleged that Wyeth failed to adequately warn of side effects such as "severe seizures" and "irreparable brain damage" from ingestion of the drug aminophylline and that such inadequate warnings constituted either wilful and wanton acts or negligent acts. The pleading also included a count based on strict product liability in which it was alleged that Wyeth's inadequate packaging and marking of the drug could foreseeably confuse medical staff administering the drug to small children such that the incorrect dosage would be given, leading to convulsions

and irreparable brain damage.

In short, the injuries for which recovery was sought from Wyeth because of its alleged misconduct are the same injuries for which similar recovery is sought by Wyeth from St. Bernard and Dela Cruz because of their alleged misconduct. Consequently, the parties stand in relation to each other as joint tortfeasors, who directly produced a single, indivisible injury by their own actions.

Further, we are unpersuaded that Marcus' complaint of a series of successive, progressively worsening symptoms should alter this result. Instead, the controlling factor is that the conduct of Wyeth, St. Bernard, and Dela Cruz directly produced this series of successively worsening conditions. Under Wyeth's view, it could be held liable because of its inadequate warnings regarding the drug's side effects and because of its inadequate packaging leading to confusion in the drug's administration. However, it could then seek indemnification from St. Bernard and Dela Cruz because they allegedly committed negligent or wilful and wanton acts by inadequately treating the very side effects of which Wyeth failed to adequately warn and by incorrectly administering the drug because of confusion caused by Wyeth's inadequate packaging and marking of the drug. In our view this is insufficient to state a claim for equitable apportionment in an indemnity action.

### "COMPARATIVE INDEMNIFICATION" BASED UPON ACTIVE/PASSIVE NEGLIGENCE

Wyeth claims that its proposed counterclaims against St. Bernard and Dela Cruz properly stated a claim for "comparative indemnification" (as we have denominated the theory) to the extent that St. Bernard and Dela Cruz allegedly engaged in "actively" negligent and careless conduct for which Wyeth might be found liable under a theory of strict product liability or negligence. Wyeth has conceded in this appeal that it has no right to seek contribution pursuant to *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, or the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*), since *Skinner* and the Act apply only to causes of action for injuries sustained subsequent to March 1, 1978, and Marcus' alleged injuries were suffered prior to that date. Wyeth has also made no argument that its counterclaims stated a cause of action for implied indemnification *per se*. Accordingly, we need not address whether Wyeth's counterclaims stated a claim based upon either of these theories.

Wyeth argues instead that it is entitled to recover from St. Bernard and Dela Cruz based upon "comparative indemnification,"

*i.e.*, application of the principles of comparative fault to an indemnity claim. This argument is founded on two points. First Wyeth claims that recent Illinois Supreme Court decisions, when analyzed comprehensively, have not abolished the right to indemnification. (See *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867; *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197; *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886; *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, 374 N.E.2d 458; *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, 374 N.E.2d 455; *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.) Rather, according to Wyeth, these decisions have implicitly expanded indemnification to include a right to "comparative indemnification" and establish that a manufacturer should be entitled to seek such relief from a downstream user of its product.

Second, Wyeth contends that such a right to "comparative indemnification" obtains even where the original injury was sustained prior to March 1, 1978, which is the date of applicability of *Skinner* and the Contribution Act. Wyeth claims that this date applies solely to actions for contribution and was not intended to have uniform application to all claims where principles of contribution or comparative fault are applied. To support this argument, Wyeth points out that the March 1, 1978, date has not been adopted in other related Illinois Supreme Court decisions where the court has determined to give prospective application to the holdings of the case (see *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28, 421 N.E.2d 886 (rule permitting comparative negligence between plaintiff and defendant adopted as to all trials beginning on or after June 8, 1981)), and that still other decisions have adopted no specific prospective application date at all. See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.

We are unpersuaded by Wyeth's argument that recent Illinois Supreme Court decisions recognize a right to "comparative indemnifications." Wyeth has not referred specifically to anything in these decisions which would support such a conclusion, and we also can find no clear language to justify such a result. In fact our analysis of recent Illinois Supreme Court and appellate court decisions leads us to conclude that principles of comparative fault are not applicable to an action for implied indemnification.

■ Recent jurisprudence of the Illinois Supreme Court has drawn clear distinctions between a claim for contribution and one for indemnity. The common element of these decisions has been "[i]n short,

[that] contribution and indemnification are distinct theories of recovery ***." (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349-50, 459 N.E.2d 935.) Thus, the court has explained that contribution is "a statutory remedy which involves a sharing of payment of damage awards and is available to all parties who are 'subject to liability in tort arising out of the same injury *** or the same wrongful death' (Ill. Rev. Stat. 1979, ch. 70, par. 302(a))." (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349.) Its purpose is to shift "only part of the loss depending on the comparative responsibility of the parties ***" (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 16-17), such that generally "no party is liable to make contribution beyond his *pro rata* share of the common liability as measured by the extent to which his acts or omissions, whatever their nature, proximately caused the injury ***." *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349.

■ The Illinois Supreme Court has further observed that indemnity, on the other hand, is a common law doctrine providing for the complete shifting of liability from the defendant to another party. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 16; *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349.) Such implied indemnification obtains where there is "a pre-tort relationship with the indemnitor and some significant difference in the nature of their respective conduct which justifies a shifting of liability." (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349; see also *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469-70, 475 N.E.2d 867 (implied indemnity required proof of pretort relationship); *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 454-55, 473 N.E.2d 946 (implied indemnity requires proof of qualitative distinction in conduct of parties).) Thus, implied indemnity is proper "[w]here one does the act which produces the injury and the other does not join in the act but is thereby exposed to liability and suffers damage ***[;] the law will inquire into the real delinquency and place the ultimate liability upon him whose fault was the primary cause of the injury. [Citations.]" *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 454, quoting *Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 339, 141 N.E. 739.

Further we note that the Illinois Supreme Court has thus far declined to resolve the question of whether an implied indemnity claim survives *Skinner* and the Contribution Act. (See *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 471, 475 N.E.2d 867; *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 453-54, 473 N.E.2d 946; *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344,

350-51, 459 N.E.2d 935.) Although the appellate courts of this State have differed in their resolutions of this question (see *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 675-76; *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 770-74, 469 N.E.2d 653; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 97, 463 N.E.2d 792; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 612-13, 422 N.E.2d 979), we observe that each has founded its reasoning on the premise that contributions and indemnity are distinct causes of action.

■ Based on the foregoing precedent, we find no justification for an action in "comparative indemnification" where principles of comparative fault are applied to an indemnity claim. We recognize that this recent jurisprudence represents substantial advancements in the rules which regulate the respective liabilities of parties to tort claim actions and is founded on the fundamental principle that each of the parties should be held accountable for the consequences of his own fault. Nevertheless, in our view this is insufficient reason to avoid the prospective application date of *Skinner* and the Contribution Act through the recognition of what essentially amounts to a new claim based upon "comparative indemnification." Accordingly we conclude that the trial court committed no error in dismissing Wyeth's counterclaim on this ground.

### "COMPARATIVE INDEMNIFICATION" BASED UPON WILFUL AND WANTON MISCONDUCT

■ Wyeth contends that its counterclaims against St. Bernard and Dela Cruz stated a claim for "comparative indemnification" to the extent that St. Bernard and Dela Cruz allegedly engaged in wilful and wanton conduct for which Wyeth might be held liable under a theory of strict product liability or negligence.

Wyeth concedes before this court that there is no clear precedent for the proposition it advances. Based upon our review and analysis of the jurisprudence of this State as set out more fully above, we conclude that Wyeth cannot state a claim for "comparative indemnification" based upon the allegedly wilful and wanton misconduct of St. Bernard and Wyeth.

As a concluding comment, we observe that based upon the parties' pleadings, Wyeth, St. Bernard, and Dela Cruz could all be found to have committed acts of an intentionally wilful and wanton nature. The rule which prohibits either contribution or indemnification among *intentional* tortfeasors dates back at least to *Merryweather v. Nixan* (1799), 1091 Eng. Rep. 1337, 8 Term R. 186. This prohibition was sub-

sequently extended to apply to both intentional and negligent tortfeasors; later it was modified to permit indemnification although not contribution) where one tortfeasor was deemed "actively" negligent and the other "passively" negligent. (See *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 7-9; see also *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 193-98, 229 N.E.2d 769.) Nevertheless, the *Merryweather* rule in its "pristine version" (*Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 194), which prohibits contribution or indemnification among intentional tortfeasors was specifically adopted by the Illinois Supreme Court in *Farwell v. Becker* (1889), 129 Ill. 261, 21 N.E. 792. (See *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 7-9.) Although "*Farwell* has not been cited, followed or overruled in subsequent decisions of [the Illinois Supreme Court] [on this precise question]" (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 9), subsequent decisions have repeated and relied upon the rule. (*E.g., Wanack v. Michels* (1905), 215 Ill. 87, 94-95, 74 N.E. 84; *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 910, 443 N.E.2d 626; *McDonald v. Trampf* (1964), 49 Ill. App. 2d 106, 113-20, 198 N.E.2d 537; *Chicago Railways Co. v. R.F. Conway Co.* (1920), 219 Ill. App. 220, 223; *Wallach v. Billings* (1915), 195 Ill. App. 605, 617, *aff'd on other grounds* (1917), 277 Ill. 218, 115 N.E. 382.) Wyeth has made no contention that *Skinner* worked any change on the rule which prohibits contribution or indemnification between intentional tortfeasors. Consequently, we see no reason to consider here whether the rule has been or should be modified in this regard.

For the reasons stated, the orders of the trial court are affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.