# Illinois Official Reports

## Supreme Court

---

### *Sperl v. Henry*, 2018 IL 123132

---

| | |
|---|---|
| Caption in Supreme Court: | SUSAN D. SPERL v. DeAN HENRY *et al.* (C.H. Robinson Company *et al.*, Appellants, v. Toad L. Dragonfly Express, Inc., Appellee). |
| Docket No. | 123132 |
| Filed | November 29, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. John C. Anderson and the Hon. Michael J. Powers, Judges, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Don R. Sampen, Thomas H. Ryerson, and Edward M. Kay, of Clausen Miller, P.C., of Chicago, for appellants. Thomas P. Burke, David M. Lewin, and Aaron DeAngelis, of Querrey & Harrow, Ltd., of Chicago, for appellee. |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion. Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this case, we consider whether a vicariously liable defendant has a right of contribution against another vicariously liable defendant when their common liability arises from the negligent conduct of the same agent. We hold that the Joint Tortfeasor Contribution Act (Contribution Act or Act) (740 ILCS 100/0.01 *et seq.* (West 2012)) provides a right of contribution in the specific circumstances presented here. Accordingly, we reverse the appellate court's judgment.

¶ 2    I. BACKGROUND

¶ 3    This is a contribution action between two vicariously liable defendants, C.H. Robinson Company and other related corporations (CHR) and Toad L. Dragonfly Express, Inc. (Dragonfly), arising out of a multiple-vehicle accident. CHR is a logistics company and freight broker that contracts with licensed motor carriers to transport goods for its customers. CHR entered into a contract with Jewel Food Stores to purchase, store, and arrange for transportation of produce to Jewel stores. At that time, DeAn Henry owned a semi-tractor that she leased to Dragonfly, a federally licensed motor carrier.

¶ 4    Henry was allowed to use Dragonfly's carrier authority to book and deliver loads. She, therefore, contacted CHR and agreed to deliver a load of potatoes from Idaho to CHR's Bolingbrook, Illinois, warehouse for repackaging and shipment to Jewel stores. In the course of delivering the potatoes, Henry was driving the tractor-trailer northbound on Interstate 55. As she approached Plainfield, Illinois, Henry noticed that the vehicles ahead of her were stopped, but she was unable to stop her tractor-trailer in time and ran over several vehicles. Joseph Sperl and Thomas Sanders died, and William Taluc was seriously injured in the collision.

¶ 5    Susan Sperl, individually and as executor of the estate of Joseph Sperl; Annette Sanders, individually and as administrator of the estate of Thomas Sanders; and William and Skye Taluc filed separate lawsuits against Henry, Dragonfly, and CHR for wrongful death, survival, and personal injuries based on Henry's negligent operation of the truck. The separate actions were later consolidated for trial. Henry admitted negligence and liability. Dragonfly admitted liability and a "united" negligence with Henry. CHR denied liability and filed a claim for contribution against Henry and Dragonfly.

¶ 6    At trial, CHR argued it could not be held vicariously liable for Henry's negligence under the doctrine of *respondeat superior* because the evidence was insufficient to establish an agency relationship. During the jury instruction conference, CHR's contribution claim was severed from the wrongful death, survival, and personal injury actions. CHR submitted a proposed verdict form asking the jury to allocate fault between Henry, Dragonfly, and CHR under section 2-1117 of the Code of Civil Procedure (735 ILCS 5/2-1117 (West 2008)), but the trial court rejected that proposed verdict form.

¶ 7    The jury returned a verdict for each of the plaintiffs and specifically found that Henry was CHR's agent at the time of the accident. CHR was, therefore, vicariously liable for the plaintiffs' injuries under the doctrine of *respondeat superior*. The jury awarded damages in the three consolidated actions totaling $23,775,000, jointly and severally, against Henry, CHR, and Dragonfly.

¶ 8    On appeal, CHR contended that the evidence did not support the jury's finding of an agency relationship between CHR and Henry. CHR also argued that the trial court erred in refusing its proposed verdict form asking the jury to allocate fault between Henry, Dragonfly, and CHR. The appellate court held that several of the factors for determining whether an agency relationship exists, including the two most pivotal ones, indicated that Henry was acting as CHR's agent when the accident occurred. Accordingly, the jury's finding that CHR had an agency relationship with Henry was not against the manifest weight of the evidence. *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1056-60 (2011).

¶ 9    In rejecting CHR's claim that Henry and Dragonfly should have been included on the verdict form for allocating fault under section 2-1117 of the Code of Civil Procedure, the appellate court noted that section 2-1117 does not apply if liability among the tortfeasors cannot be apportioned. CHR's liability could not be apportioned between it and Henry because CHR's liability was based entirely upon the doctrine of *respondeat superior* rather than its own negligence. In those circumstances, a basis exists for indemnity but not for apportioning damages between the principal and the agent. *Sperl*, 408 Ill. App. 3d at 1060 (citing *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347, 353 (1992)). CHR's liability could also not be apportioned with Dragonfly because the agency relationship made CHR entirely liable for Henry's negligent conduct. The appellate court observed in passing that CHR may potentially seek contribution from Dragonfly but held that the trial court properly denied the proposed verdict form seeking to allocate fault. *Sperl*, 408 Ill. App. 3d at 1061. Accordingly, the trial court's judgment was affirmed. *Sperl*, 408 Ill. App. 3d at 1061.

¶ 10    CHR paid the judgments in full, totaling more than $28 million, including postjudgment interest. Each plaintiff executed a satisfaction of judgment stating that he or she had "received full satisfaction and payment from [CHR]," including accrued interest, and requested the clerk of court to "cancel and discharge the judgment."

¶ 11    CHR then obtained leave of the trial court to file the amended consolidated cross-claim for contribution against Dragonfly at issue in this appeal. In count I, CHR alleged it was not at fault but Dragonfly was negligent in several respects. CHR asserted that it had paid more than its *pro rata* share of the common liability and was entitled to contribution from Dragonfly under sections 2 and 3 of the Contribution Act. (740 ILCS 100/2, 3 (West 2010)). CHR asked the trial court to award it contribution based on the court's determination of Dragonfly's fault. In count II, CHR alleged that Henry, Dragonfly, and CHR were found jointly and severally liable but Henry's share of the liability was "substantially uncollectable." CHR and Dragonfly later stipulated that "Henry has no personal assets, and never had personal assets, from which any judgment against her could have been collected." CHR alleged that it and Dragonfly were required to share Henry's uncollectable portion of the liability. CHR, therefore, asked the trial court to determine the uncollectable share of the judgments based on Henry's fault and to award CHR contribution against Dragonfly accordingly. In count III, CHR asserted that it had a right to contribution, even if Dragonfly's liability was vicarious, because the parties would be equally liable in those circumstances but CHR paid the entire amount of the judgments. CHR alleged that "[i]n the absence of requiring contribution by Dragonfly, a serious injustice will occur." CHR, therefore, asked the trial court to determine whether Dragonfly's liability was vicarious and to award contribution based on that finding.

¶ 12    After the trial court denied Dragonfly's motion to dismiss, CHR asked the court to reempanel the original jury to resolve its cross-claim for contribution. The trial court denied that request, noting that CHR failed to object to dismissal of the jury following the trial or to alert the trial court of the need to keep the jury for consideration of the contribution claim. The trial court also observed that the jurors most likely would not have sufficient memory of the evidence to consider the contribution claim because the verdicts were entered over four years previously. Following that ruling, the parties agreed to submit trial briefs on the issues, including references to the trial record. The trial court agreed that a trial on the briefs using the record from the underlying trial "was the best of several imperfect alternatives."

¶ 13    Based on the parties' briefs and the record of the underlying trial, the trial court ruled that "CHR and Dragonfly engaged in conduct that equally contributed to the cause of the accident at issue." The court found that CHR exercised significant control over Henry and her operation of the truck and Henry was acting, at least in part, as Dragonfly's agent at the time of the accident. On count I of the cross-claim, the trial court, therefore, concluded that CHR and Dragonfly were "equally at fault *** and should be equally responsible for damages awarded by the jury." Based on that ruling, the trial court found it was unnecessary to address counts II and III of the cross-claim. The trial court later entered judgment for CHR on count I of its cross-claim for contribution in the amount of $14,326,665.54, constituting one-half of the total amount paid by CHR to the three plaintiffs.

¶ 14    On appeal, Dragonfly argued that the Contribution Act applies only when there is a basis for comparing the fault of joint tortfeasors and one of them has paid more than its share of the judgment based on its relative culpability. Dragonfly contended there was no basis for comparing the relative fault of the parties in this case because CHR and Dragonfly were found liable only vicariously, meaning that neither party was "at fault." Further, CHR did not pay more than its *pro rata* share of liability because CHR and Dragonfly were each 100% liable for Henry's negligent operation of the truck. 2017 IL App (3d) 150097, ¶ 26.

¶ 15    The appellate court agreed, explaining that when a principal is held vicariously liable for the conduct of its agent, the principal is not " 'at fault in fact,' " but is considered " 'blameless.' " 2017 IL App (3d) 150097, ¶ 28 (citing *American National Bank*, 154 Ill. 2d at 354). In this case, both CHR and Dragonfly were found liable only vicariously. Neither party was found to be at fault in fact. 2017 IL App (3d) 150097, ¶ 29. The parties were, therefore, in an identical position, and both were 100% liable for Henry's negligence by operation of law. 2017 IL App (3d) 150097, ¶ 29. The appellate court concluded that the Contribution Act did not provide a remedy because both Dragonfly and CHR were "blameless" for contribution purposes and there was no basis for comparing their respective fault, as required by the Act. Further, neither party would pay more than its *pro rata* share of the common liability even if it paid the entire judgment because each party was 100% liable for the damages caused by Henry. 2017 IL App (3d) 150097, ¶ 29. Accordingly, the appellate court reversed the trial court's judgment awarding contribution to CHR and remanded to the trial court for further proceedings. 2017 IL App (3d) 150097, ¶ 61.

¶ 16    Justice Schmidt dissented, asserting that "[t]he majority's hypertechnical construction of the Act leads to an absurd and unjust result certainly not intended by the legislature." 2017 IL App (3d) 150097, ¶ 64 (Schmidt, J., dissenting). Because both CHR and Dragonfly were "blameless when it comes to fault in fact," they were equally responsible or culpable for

contribution purposes and should share liability equally. 2017 IL App (3d) 150097, ¶ 68 (Schmidt, J., dissenting). Justice Schmidt concluded that this interpretation of the Contribution Act served its purposes of equitably apportioning damages among defendants and encouraging settlements. 2017 IL App (3d) 150097, ¶ 70 (Schmidt, J., dissenting).

¶ 17    We allowed CHR's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Nov. 1, 2017)).

¶ 18                                    II. ANALYSIS

¶ 19    On appeal to this court, CHR contends that (1) a right of contribution exists between it and Dragonfly, as vicariously liable defendants, both under the Contribution Act and as a matter of equity; (2) it is entitled to contribution based on several judicial admissions of direct negligence by Dragonfly during the underlying trial; and (3) it is entitled to contribution based on a federal regulation supporting a finding that Dragonfly was negligent. We address CHR's arguments in turn.

¶ 20              A. Contribution Between Vicariously Liable Defendants

¶ 21    CHR contends the Contribution Act applies when, as here, a vicariously liable defendant has paid more than its share of a common liability relative to another vicariously liable defendant. CHR maintains that allowing contribution in these circumstances furthers the Contribution Act's purposes of encouraging settlements and equitably apportioning damages.

¶ 22    Dragonfly responds that the Contribution Act applies only to tortfeasors at fault in fact. A vicariously liable defendant is not at fault in fact but is considered blameless. Additionally, CHR is 100% liable for the judgments as a result of its principal-agent relationship with Henry, and therefore, it could never pay more than its *pro rata* share of the common liability. Dragonfly concludes that CHR does not have a right of contribution in this case under the plain language of the Contribution Act.

¶ 23    This case presents an issue of statutory construction. The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. *Moon v. Rhode*, 2016 IL 119572, ¶ 22. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12. A court may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25. The construction of a statute is a question of law subject to *de novo* review. *Bueker v. Madison County*, 2016 IL 120024, ¶ 13.

¶ 24    The Contribution Act codified this court's decision in *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1 (1977), and created a right of contribution among joint tortfeasors. *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 363 (2005). The Act provides, in pertinent part:

> "§ 2. Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

> (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the

amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." 740 ILCS 100/2(a), (b) (West 2012).

"§ 3. Amount of Contribution. The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability." 740 ILCS 100/3 (West 2012).

¶ 25    In this case, CHR and Dragonfly are "subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." See 740 ILCS 100/2(a) (West 2012). The plain language of section 2(a) of the Contribution Act, therefore, appears to provide a right of contribution between CHR and Dragonfly in these circumstances. Dragonfly argues, however, that sections 2(b) and 3 of the Act, together with this court's case law, clarify that the Act applies only to tortfeasors at fault in fact. Dragonfly maintains that vicariously liable defendants are not at fault in fact and, therefore, it is not possible to assess their relative culpability as required by section 3 of the Act.

¶ 26    Dragonfly's argument relies heavily on this court's decision in *American National Bank*. There, this court considered whether the Contribution Act effectively abolished actions for common-law implied indemnity when a principal is vicariously liable for the conduct of an agent. *American National Bank*, 154 Ill. 2d at 348. In cases of vicarious liability in a quasi-contractual context, liability is imposed upon a blameless principal derivatively through an agent's conduct. *American National Bank*, 154 Ill. 2d at 351. The agent is at fault in fact for the plaintiff's injuries, and the principal is considered blameless. *American National Bank*, 154 Ill. 2d at 354. The Contribution Act, however, is "premised on fault-based considerations." *American National Bank*, 154 Ill. 2d at 353. Under section 3 of the Act, a tortfeasor's "pro rata share" of a common liability is determined based on "his relative culpability." *American National Bank*, 154 Ill. 2d at 353. This court, therefore, stated the Act "is addressed only to the relative culpability of tortfeasors at fault in fact." *American National Bank*, 154 Ill. 2d at 354. Accordingly, in cases of vicarious liability, the blameless principal "simply cannot be one of the 'other tortfeasors' to which section 3 of the Contribution Act refers." *American National Bank*, 154 Ill. 2d at 354. This court concluded that vicarious liability only provides a basis for indemnity, not for apportionment of damages, between the principal and the agent. *American National Bank*, 154 Ill. 2d at 354.

¶ 27    While we acknowledge that certain statements in *American National Bank* support Dragonfly's argument, the issue in that case involved consideration of the principal-agent relationship when the principal becomes vicariously liable as a result of the agent's conduct. *American National Bank*, 154 Ill. 2d at 354. Under the doctrine of *respondeat superior*, an agent's wrongful conduct may be imputed to the principal. The principal's liability is "entirely derivative." *Moy v. County of Cook*, 159 Ill. 2d 519, 524 (1994). The relative culpability of the principal and the agent in the context of vicarious liability was central to the decision in *American National Bank*. This case presents different circumstances. Here, we are concerned with determining whether the Contribution Act applies to apportion a common liability between two principals, both vicariously liable for the negligence of the same agent.

¶ 28    Prior to concluding the opinion in *American National Bank*, this court stated that "settlements between the principal and the plaintiff merit different consideration. [Citation.] Such a settlement has the effect of creating, in the blameless principal, an interest indistinguishable from the contribution interests of the 'other tortfeasors' at fault in fact. [Citation.] The Contribution Act should therefore apply." *American National Bank*, 154 Ill. 2d at 355. This court, therefore, acknowledged that different circumstances may warrant a different analysis under the Contribution Act.

¶ 29    We believe this is a case that merits different consideration for several reasons. As previously noted, the Act provides a right of contribution among two or more persons "subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." 740 ILCS 100/2(a) (West 2012). The plain language of section 2(a) does not expressly exclude vicariously liable defendants from the scope of the Act. Although the Act refers to "tortfeasor[s]" in subsequent provisions, that term is defined for the purposes of the Contribution Act in section 2(a) as a person "subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." 740 ILCS 100/2(a) (West 2012). Section 2(a) only requires the parties to the contribution action to "be potentially capable of being held liable to the plaintiff in a court of law or equity." *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 529 (1995). Vicariously liable defendants are, therefore, included within the scope of the Act under the plain language of section 2(a).

¶ 30    Dragonfly's argument that the Contribution Act applies only to tortfeasors at fault in fact is based on the language in sections 2(b) and 3. Section 2(b) provides for a right of contribution when a defendant has paid more than its *pro rata* share of a common liability. 740 ILCS 100/2(b) (West 2012); *BHI Corp.*, 214 Ill. 2d at 363. Section 3 of the Act provides that each tortfeasor's "pro rata share" of a common liability is determined based on "his relative culpability." 740 ILCS 100/3 (West 2012); *American National Bank*, 154 Ill. 2d at 353. A party's *pro rata* share is based on his relative fault, as measured by the extent "his acts or omissions, whatever their nature, proximately caused the injury." *Heinrich v. Peabody International Corp.*, 99 Ill. 2d 344, 349 (1984). Contribution is not a recovery for the tort, however, but the enforcement of an equitable duty to share a common liability. *Doyle v. Rhodes*, 101 Ill. 2d 1, 14 (1984). The phrase "relative culpability," therefore, requires a comparison of fault between two or more persons subject to liability in tort.

¶ 31    Dragonfly contends that fault cannot be apportioned in this case because both CHR and Dragonfly are blameless principals and are not at fault in fact. In this case, however, CHR and Dragonfly are both subject to liability in tort, and their relative culpability is equal. They are both principals of the same agent who caused the injuries. Dragonfly acknowledges the "share of each is identical." The trial court found CHR and Dragonfly were "equally at fault," and the appellate court agreed that the parties were both found liable only vicariously and that they "stand[ ] in the identical position." 2017 IL App (3d) 150097, ¶ 29. Given the specific circumstances of this case, we see no reason why the relative culpability of CHR and Dragonfly cannot be compared. Their relative culpability is equal given their identical positions. Accordingly, under section 3 of the Act, the *pro rata* share of the common liability for both CHR and Dragonfly is 50%. See 740 ILCS 100/3 (West 2012).

¶ 32    Although we conclude that CHR is entitled to contribution under the plain language of the Contribution Act, we further note that allowing contribution in these circumstances promotes

the purposes of the Act. This court has frequently observed that " 'the Contribution Act seeks to promote two important public policies—the encouragement of settlements and the equitable apportionment of damages among tortfeasors.' " *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 13 (quoting *Johnson v. United Airlines*, 203 Ill. 2d 121, 135 (2003), citing *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 193-94 (2001), and *In re Guardianship of Babb*, 162 Ill. 2d 153, 171 (1994)). The right of contribution obviously furthers the interest in equitable apportionment of damages in this case given that CHR and Dragonfly share equal relative culpability. Additionally, as the appellate dissent recognized, denying contribution here would reduce the incentive for a principal to pay the judgment quickly or to settle a case because the principal would not have an opportunity to seek contribution from another vicariously liable defendant. 2017 IL App (3d) 150097, ¶ 70 (Schmidt, J., dissenting). Accordingly, the purposes of the Contribution Act would be undermined, not served, if CHR were denied contribution in these circumstances.

¶ 33    We, therefore, conclude that the Contribution Act applies to the specific circumstances of this case involving two principals vicariously liable for the negligence of a common agent. Here, the *pro rata* share of the common liability for both CHR and Dragonfly is 50%. Accordingly, the trial court did not err in awarding CHR contribution against Dragonfly for one-half of the total amount of the judgments.

¶ 34                                B. Judicial Admissions

¶ 35    CHR also argues that Dragonfly admitted its own negligence during the underlying trial. Based on those judicial admissions, CHR contends it is entitled to a greater level of contribution given the difference in culpability between it as a vicariously liable defendant and Dragonfly as a negligent tortfeasor. In support of this argument, CHR lists the following statements made by Dragonfly's attorneys and owner at trial: (1) during opening statements, joint counsel for DeAn Henry and Dragonfly stated, "my clients have admitted their negligence"; (2) Dragonfly's owner agreed on cross-examination that she "conceded [her] negligence"; (3) joint counsel argued Henry and Dragonfly should be listed together on the verdict forms because they made "the same admission of negligence and liability" and "there's been a united negligence admission and liability"; (4) in response to a statement from the trial court, joint counsel agreed that he had "admitted all the negligence *** as to plaintiffs' claim"; (5) during closing argument, joint counsel stated his clients wished they "could turn back the hands of time and correct their omissions, their mistakes, their actions"; and (6) counsel consented to jury instructions stating Henry and Dragonfly "admit[ted] that they were negligent and that their negligence was a proximate cause of injuries to the plaintiffs." According to CHR, those statements are judicial admissions of Dragonfly's own negligence rather than an acknowledgement of its vicarious liability for Henry's conduct.

¶ 36    We disagree. Dragonfly's statements admitting "negligence" do not constitute judicial admissions. "Judicial admissions are 'deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge.' " *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 475 (2010) (quoting *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998)). " '[A] party is not bound by admissions regarding conclusions of law because the courts determine the legal effect of the facts adduced.' " *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 47 (quoting *JPMorgan Chase Bank*, 238 Ill. 2d at 475).

A negligence claim requires proof of a duty owed by the defendant to the plaintiff, and the existence of a duty is a question of law for the court to decide. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225-26 (2010); *Iseberg v. Gross*, 227 Ill. 2d 78, 86-87 (2007). Even under CHR's characterization, Dragonfly's statements about negligence in this case are not assertions of concrete facts within its knowledge but are in the nature of conclusions of law. Accordingly, they cannot be judicial admissions.

¶ 37    Further, Dragonfly did not admit to any independent act or omission that may have supported a direct negligence claim. Rather, it made only general statements that both Henry and Dragonfly "admitted their negligence" and shared a "united negligence." All but one of the statements identified by CHR were made by joint counsel representing both Henry and Dragonfly. Joint counsel's statement that Henry and Dragonfly shared a "united negligence" is consistent with an admission that Dragonfly was vicariously liable for Henry's negligent conduct in driving the truck. In vicarious liability actions, " 'the liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one.' " *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 74 (1994) (quoting *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 124 (1978)). We believe the statements identified by CHR simply acknowledge that Henry and Dragonfly were both liable and that their liability was "unified" based on their principal-agent relationship.

¶ 38    In its contribution order, the trial court found that "Henry, while acting as (at least in part) Dragonfly's agent, operated the truck in such a way that led to the death of two people and the catastrophic injury of another." Thus, as to Dragonfly, the trial court's contribution finding was based on its vicarious liability for Henry's conduct, not a finding of direct negligent conduct by Dragonfly. We conclude that Dragonfly's statements at trial only admitted vicarious liability based upon its agency relationship with Henry. Accordingly, we reject CHR's arguments assigning direct negligence to Dragonfly and the various levels of contribution CHR requests based on its argument that Dragonfly admitted its own negligence.

¶ 39                               C. Federal Regulation

¶ 40    CHR also makes a separate argument that a federal regulation governing interstate motor carrier leases, "[w]hen combined with Dragonfly's admissions at the tort trial," supports a finding that Dragonfly was directly negligent rather than vicariously liable for Henry's negligence. CHR relies upon a federal regulation stating:

> "The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 376.12(c)(1) (2004).

¶ 41    The appellate court rejected CHR's argument based on the federal regulation, stating that that provision has been interpreted by courts as making a motor carrier lessee vicariously liable for injuries to a third party caused by the operation of the leased vehicle but that its "research ha[d] not uncovered any case holding or implying that a motor carrier lessee is *directly* liable for such injuries." (Emphasis in original.) 2017 IL App (3d) 150097, ¶ 57. CHR has not provided this court with any authority disputing the appellate court's conclusion on this point. To the contrary, the cases cited by CHR actually support the appellate court's conclusion that

the regulation may result in vicarious liability. See *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159, 176-78 (2007) (observing that some courts have held motor carrier lessees may be held vicariously liable under the regulation); *Kreider Truck Service, Inc. v. Augustine*, 76 Ill. 2d 535, 537-41 (1979) ("courts have developed a form of vicarious liability" based on the federal regulations). Accordingly, we conclude the regulation, by itself, does not support a finding that Dragonfly was directly negligent.

¶ 42    In sum, we reject CHR's argument that it is entitled to a greater level of contribution based on a difference in relative culpability between CHR and Dragonfly. The parties to this contribution action, CHR and Dragonfly, were both only vicariously liable for Henry's negligent conduct. As we have held, the parties have equal relative culpability given the specific circumstances of this case, but CHR has paid the entire judgment. CHR is, therefore, entitled to contribution from Dragonfly under the Contribution Act. Accordingly, we affirm the trial court's judgment awarding CHR contribution against Dragonfly in the amount of $14,326,665.54, constituting one-half of the total amount of the judgments, including postjudgment interest.

¶ 43                                III. CONCLUSION

¶ 44    For the reasons stated above, the judgment of the appellate court is reversed, and the circuit court's judgment is affirmed.

¶ 45    Appellate court judgment reversed.

¶ 46    Circuit court judgment affirmed.