2017 IL App (3d) 150097

Opinion filed December 6, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | |
|---|---|
| SUSAN D. SPERL, Individually and as Executor of the Estate of Joseph D. Sperl, Deceased, | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois |
| Plaintiff, | Appeal No. 3-15-0097 Circuit Nos. 04-L-428, |
| v. | 05-L-812, and 09-L-5 (cons.) |
| DeAN J. HENRY; TOAD L. DRAGONFLY EXPRESS, INC.; C.H. ROBINSON COMPANY, INC., d/b/a C.H. Robinson Transportation Company, Inc.; C.H. ROBINSON INTERNATIONAL, INC.; PBX, INC., d/b/a Tyson Food Logistics, a Foreign Corporation; TYSON FRESH MEATS, INC., a Foreign Corporation; and MICHAEL R. SMITH, | Honorable John Anderson and Michael J. Powers, Judges, Presiding. |
| Defendants. | |
| WILLIAM TALUC and SKYE TALUC, | |
| Plaintiffs, | |
| v. | |
| C.H. ROBINSON COMPANY; C.H. ROBINSON COMPANY, INC.; C.H. ROBINSON WORLDWIDE, INC.; C.H. ROBINSON INTERNATIONAL, INC.; C.H. ROBINSON WORLDWIDE-LTL, INC.; DeAN HENRY, Individually and d/b/a DJ | |

Transport; MICHAEL R. SMITH, Individually )
and d/b/a Toad L. Dragonfly Express; and )
LUANN G. WHITENER-BLACK, Deceased, )
Individually and d/b/a Toad L. Dragonfly )
Express, )
                                          )
Defendants. )
                                          )
_____ )
                                          )
ANNETTE SANDERS, Individually and as )
Administrator of the Estate of Thomas )
S. Sanders, Deceased, )
                                          )
 Plaintiff, )
                                          )
        v. )
                                          )
C.H. ROBINSON INTERNATIONAL, INC.; )
C.H. ROBINSON COMPANY; C.H. )
ROBINSON WORLDWIDE, INC.; C.H. )
ROBINSON COMPANY, LP; C.H. )
ROBINSON COMPANY, INC.;C.H. )
ROBINSON WORLDWIDE FOUNDATION; )
DeAN J. HENRY; LUANN G. )
WHITENER-BLACK, Deceased; and )
MICHAEL R. SMITH, Individually and d/b/a )
Toad L. Dragonfly Express, )
                                          )
 Defendants. )
                                          )
(C.H. Robinson Company, C.H. Robinson )
Worldwide, Inc., C.H. Robinson International, )
Inc., and C.H. Robinson Worldwide-LTL, Inc., )
Defendants, Cross-Plaintiffs-Appellees, and )
Cross-Appellants; Toad L. Dragonfly Express, )
Inc., Defendant, Cross-Defendant-Appellant )
and Cross-Appellee.) )

_____

        PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
        Justice McDade concurred in the judgment and opinion.
        Justice Schmidt dissented, with opinion.

_____

**OPINION**

2

¶ 1 Defendant Toad L. Dragonfly Express, Inc. (Dragonfly), appeals an award of contribution entered against it and in favor of defendant C.H. Robinson Worldwide, Inc., and other related corporate entities (collectively, CHR). After a jury trial, judgments totaling $23,225,000 were entered, jointly and severally, against Dragonfly and its owner, Luann G. Whitener-Black (Black) (now deceased), DeAn Henry (Henry), and CHR in three consolidated tort actions stemming from a fatal automobile accident. Henry was the driver of a semi-tractor involved in the accident. Dragonfly is a federally licensed motor carrier that had leased Henry's semi-tractor at the time of the accident, and CHR was the broker of the load Henry was carrying at the time.

¶ 2 After CHR fully satisfied the tort judgments (including postjudgment interest), CHR sought contribution from Dragonfly under the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/0.01 *et seq.* (West 2014)). The trial court granted CHR contribution against Dragonfly for 50% of the jury's total award in the underlying tort actions, including postjudgment interest. Dragonfly now appeals the trial court's order granting contribution to CHR. Dragonfly argues that CHR is not entitled to contribution from Dragonfly because the Act creates a right of contribution based upon comparative fault and neither CHR nor Dragonfly were at fault in this case. Rather, each party was a blameless principal that was vicariously liable for the fault of the same agent (Henry). Dragonfly also argues that section 2(e) of the Act bars CHR from seeking contribution from Dragonfly because (1) section 2(e) provides that a tortfeasor who settles with a claimant "is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement" (740 ILCS 100/2(e) (West 2014)) and (2) the three plaintiffs each settled with CHR without expressly releasing Dragonfly from liability. In the alternative, Dragonfly argues that, even if CHR was entitled to contribution, the trial court erred in awarding

3

postjudgment interest as part of the contribution award because such interest is not collectable under the Act.

¶ 3      CHR argues that the trial court's judgment should be affirmed because Dragonfly admitted both negligence and fault at trial, thereby acknowledging that it was directly liable for its own negligence, not merely vicariously for Henry's negligence. Moreover, CHR maintains that, even if Dragonfly were liable only vicariously, contribution would still be available against Dragonfly under our appellate court's reasoning in *Equistar Chemicals, L.P. v. BMW Constructors, Inc.*, 353 Ill. App. 3d 593 (2004).

¶ 4      CHR also cross-appeals the trial court's contribution judgment. In its cross-appeal, CHR argues that the trial court should have granted contribution against Dragonfly for 100% of the tort judgments (instead of the 50% awarded by the trial court) because Dragonfly's admissions of fault and governing federal regulations made Dragonfly 100% responsible for the judgments. In the alternative, CHR contends that, because Henry's portion of the common liability is "uncollectable," section 3 of the Act (740 ILCS 100/3 (West 2014)) required Dragonfly to pay contribution to CHR for Dragonfly's own liability based on fault plus one half of any share of fault attributable to Henry, including applicable postjudgment interest already paid by CHR.

¶ 5                               FACTS

¶ 6      CHR is a logistics company and a federally licensed freight broker that provides a variety of transportation-related services. CHR sells its services to shippers or other customers that need to transport goods and then contracts with licensed motor carriers to transport the goods. In 2004, Jewel Food Stores (Jewel) entered into a delivery contract with CHR under which CHR purchased produce for Jewel, stored it, and then arranged for transportation to Jewel's various grocery stores.

4

¶ 7        At that time, Henry owned her own semi-tractor and leased it to Dragonfly, a federally licensed motor carrier. Dragonfly gave Henry permission to use Dragonfly's carrier authority to book and deliver loads on her own. On March 29, 2004, Henry contacted CHR and agreed to deliver a load of potatoes from Idaho to CHR's warehouse in Bolingbrook, Illinois, where they would be repackaged and then shipped to various Jewel grocery stores.

¶ 8        On the morning of April 1, 2004, Henry was driving a tractor-trailer containing CHR's potatoes northbound on Interstate 55 en route to Bolingbrook. As she approached Plainfield, Henry noticed that the vehicles ahead of her were not moving. Henry was unable to stop her truck and ran over several vehicles, causing a multiple-car accident. Joseph Sperl and Thomas Sanders died in the collision, and William Taluc sustained serious injuries.

¶ 9        William and Skye Taluc and the estates of Sperl and Sanders sued Henry, Dragonfly, and CHR for wrongful death and personal injuries sustained as a result of Henry's negligence. At trial, Henry admitted negligence and liability, and Dragonfly admitted liability and a "united" negligence with Henry. CHR denied liability and sought contribution from Henry and Dragonfly for any judgment entered against it. The trial court severed CHR's claim for contribution. The principal issue litigated at trial was whether the evidence was sufficient to establish an agency relationship between CHR and Henry, thereby rendering CHR vicariously liable for Henry's negligence under the doctrine of *respondeat superior*. During the instruction conference, CHR submitted a proposed verdict form that would have asked the jury to allocate fault between Henry, Dragonfly, and CHR under section 2-1117 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1117 (West 2008)). The trial court rejected CHR's proposed verdict form. The jury subsequently found that an agency relationship existed between CHR and Henry and entered verdicts in the three consolidated actions totaling $23,775,000, jointly and severally, against

5

Henry, Dragonfly, and CHR. The trial court subsequently reduced these verdicts by $500,000 in a posttrial order because it found that the plaintiffs had failed to prove conscious pain and suffering of the decedents.

¶ 10    CHR appealed. Our appellate court upheld the jury's finding of an agency relationship between Henry and CHR because the evidence established that CHR had controlled the manner of Henry's work performance in the delivery of the loads it brokered and had also controlled the manner of payment. *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1056-60 (2011). Our appellate court therefore affirmed the jury's verdicts, as modified, and affirmed the judgment against CHR. *Id.* at 1060-61.

¶ 11    Our appellate court also affirmed the trial court's denial of CHR's proposed verdict form which would have asked the jury to allocate fault between Henry, Dragonfly, and CHR under section 2-1117 of the Code. *Id.* Our appellate court noted that section 2-1117 applies only if the tortfeasors' liability is capable of being legally apportioned. *Id.* at 1060. It held that liability could not be apportioned between CHR and Henry because CHR's liability was premised on the doctrine of *respondeat superior*, not upon any independent act of negligence by CHR. *Id.* In other words, CHR's liability was entirely derivative of Henry's liability; CHR was liable only because its agent (Henry) had acted negligently and caused harm to the plaintiffs and their decedents. As our appellate court explained:

> " 'When an action is brought against a master based on allegedly negligent acts of the servant and no independent wrong is charged on behalf of the master, liability is entirely derivative, being founded upon the doctrine of *respondeat superior*.' [Citation.] A principal found to be vicariously liable is not found to be at fault but, rather, only liable by application of the doctrine of *respondeat superior*. [Citation.] In such cases, there is

6

only a basis for indemnity, not for apportionment of damages between the principal and the agent. [Citation.]

    \*\*\* [T]he finding of an agency relationship between CHR and Henry eliminates the possibility of comparing conduct for purposes of apportioning liability. Henry admitted negligence, and the jury found that she was acting as CHR's agent when the accident occurred. CHR was only found liable by application of the doctrine of *respondeat superior*. Since CHR's liability is exclusively derivative, it is not entitled to an allocation or comparison of fault under section 2-1117 of the Code." *Id.* at 1060.

¶ 12    Our appellate court also rejected CHR's argument that the jury should have been instructed to apportion liability between CHR and Dragonfly. Our appellate court found that CHR's argument "ignore[d] the jury's finding of an agency between CHR and Henry." It noted that, once an agency relationship was established, "CHR became entirely liable for Henry's negligent conduct, which was the proximate cause of the accident." Accordingly, our appellate court concluded that "Dragonfly's relationship with Henry \*\*\* d[id] not reduce CHR's liability for plaintiffs' damages." Our appellate court noted in passing that Dragonfly's relationship with Henry "may" allow CHR to seek contribution from Dragonfly. Our appellate court said nothing further about contribution, presumably because that issue was not raised on appeal. (As noted above, CHR's contribution claim against Dragonfly had been severed by the trial court and had not been decided by the jury at trial.)

¶ 13    CHR filed a petition for leave to appeal our appellate court's judgment in the Illinois Supreme Court. On September 28, 2011, our supreme court denied CHR's petition.

¶ 14    In October 2011, CHR paid more than $28 million to the three plaintiffs in satisfaction of the judgments entered in favor of each plaintiff, including all of the postjudgment interest that

7

had accrued on those judgments at that time. Specifically, CHR paid $7 million plus interest to plaintiff Susan Sperl, $8.5 million plus interest to plaintiff Annette Sanders, and $7.775 million plus interest to plaintiffs William and Skye Taluc.[1] Each plaintiff subsequently executed and filed a "Satisfaction of Judgement" stating that the plaintiff had "received full satisfaction and payment from [CHR]" for the judgment entered against CHR and in favor of the plaintiff "plus accrued interest at the lawful rate and costs" and directing the clerk of court to "cancel and discharge the judgment as to CHR."[2]

¶ 15    Thereafter, upon obtaining leave of the trial court, CHR filed an amended consolidated cross-claim (cross-claim) for contribution against Dragonfly. In count I of CHR's cross-claim, CHR alleged that, because CHR had paid the judgments entered against all three of the defendants and was not at fault, CHR had paid more than its *pro rata* share of the judgments and was therefore entitled to contribution from Dragonfly under section 2 of the Act. CHR alleged that Dragonfly was negligent in several respects, including its failure to direct, supervise, and control Henry's driving; its failure to adequately train Henry with respect to speed, braking, maintaining a proper lookout, and other aspects of her driving; and its failure to communicate with Henry regularly during the trip. CHR asked the trial court to determine the level of Dragonfly's fault and to award CHR contribution against Dragonfly accordingly, plus interest.

¶ 16    In count II of its cross-claim, CHR alleged that Dragonfly, Henry, and CHR were found jointly and severally liable for the full amount of the judgments, but that Henry's share was uncollectable. Accordingly, CHR maintained that it was entitled to share with Dragonfly Henry's

---

[1]These amounts reflected the full verdicts as subsequently reduced by the trial court for the plaintiffs' failure to prove damages for conscious pain and suffering of the decedents.

[2]The "Satisfaction of Judgment" filed by plaintiff Susan Sperl directed the clerk to "cancel and discharge the judgment as to [CHR] only" and stated that "[t]his does not release or satisfy the judgment as to DeAn Henry or Luann Whitner-Black[*sic*] d/b/a Toad L. Dragonfly Express."

uncollectable portion pursuant to section 3 of the Act. (740 ILCS 100/3 (West 2010)). CHR asked the trial court to (1) determine the level of Henry's fault and the uncollectable share of her liability based on such fault; and (2) award CHR contribution against Dragonfly accordingly, "based on Dragonfly's vicarious liability and equal share of responsibility, including post judgment interest."

¶ 17　　　　In count III of its cross-claim, CHR alleged that, to the extent Dragonfly's liability was vicarious, CHR still had a right to contribution under Illinois case law. CHR contended that, unless the court ordered contribution from Dragonfly to CHR, "a serious injustice will occur inasmuch as [CHR] will have paid the entire judgments *** and Dragonfly will have paid nothing, despite the fact that both Dragonfly and [CHR] were found to be equally responsible and liable." CHR asked the trial court to determine whether Dragonfly's liability was vicarious and to award CHR contribution accordingly, plus interest.

¶ 18　　　　Dragonfly moved to dismiss CHR's counterclaim. In its motion, Dragonfly argued, *inter alia*, that CHR had failed to state a claim for contribution under the Act because (1) liability and fault could not be apportioned between CHR and Dragonfly under the Act as both defendants were liable only vicariously by virtue of their employment or agency relationship with Henry and both had acted in concert with Henry, rendering each of them entirely liable for Henry's negligence and for the judgments entered against all the defendants, and (2) CHR had "settled" with each of the plaintiffs without obtaining a release in favor of Dragonfly as required by section 2(e) of the Act (740 ILCS 100/2(e) (West 2012)), thereby precluding CHR from obtaining contribution from Dragonfly.

¶ 19    On September 12, 2014, the trial court issued a written order denying Dragonfly's motion to dismiss. In its order, the trial court expressly found that CHR's payment to the plaintiffs "was a satisfaction of the outstanding judgment[s] and not a settlement."

¶ 20    CHR asked the trial court to reassemble and re-empanel the jury to consider the contribution issues raised in its cross-claim. The trial court denied this request for several reasons, including CHR's failure to object to the dismissal of the jury after the trial and its failure to "adequately bring to [the trial court's] attention the need to keep the jury for consideration of the contribution claim."[3] Thereafter, the parties agreed to submit trial briefs on the contribution issues containing references to the trial record so that the trial court could conduct a bench trial on those issues. The court agreed with the parties' conclusion that a trial on the briefs, using the record and transcripts from the underlying trial, "was the best of several imperfect alternatives." However, the trial court cautioned that its inability to observe live witnesses would make credibility determinations more difficult.

¶ 21    After reviewing the parties' written submissions and all of the transcripts from the underlying trial, the trial court issued an order on September 12, 2014. In that order, the trial court rejected Dragonfly's argument that CHR was foreclosed from bringing its claims for contribution and ruled that our appellate court's prior ruling in the case "did not bar the contribution claim." The trial court also ruled that "both CHR and Dragonfly engaged in conduct that equally contributed to the accident at issue." For example, the court noted that, "among other things, CHR exercised significant control over *** Henry and the manner in which she operated her truck" and that Henry, "while acting (at least in part) as Dragonfly's agent, operated the truck

---

[3]The trial court also found that the jury would "probably not remember the evidence sufficient to consider the contribution claim" given that more than four years had passed since the verdicts were entered. It also noted that the case had received media attention and that the jurors had likely discussed the case with others. Further, after the discussing the matter with its administrative staff, the court opined that at least some of the original jurors "would likely be unavailable to participate for various reasons."

10

in such a way that led to the death of two people and the catastrophic injury of another." Accordingly, on count I of CHR's cross-claim, the trial court found that Dragonfly and CHR were "equally at fault" for the accident and "should be equally responsible for the damages awarded by the jury." Based on this ruling, the trial court found it unnecessary to reach counts II or III of CHR's cross-claim. However, the court noted that, "even if [it] were to reach those claims, the ultimate result would probably not be appreciably different."

¶ 22   On January 20, 2015, the trial court issued a written "Final Judgment Order" which incorporated the September 12, 2014, order by reference and entered judgment in favor of CHR and against Dragonfly on count I of CHR's cross-claim for contribution in the amount of $14,326,665.54. That amount constituted one half of the judgments paid by CHR to the three plaintiffs, including one half of the accumulated postjudgment interest.

¶ 23   This appeal followed.

¶ 24                                              ANALYSIS

¶ 25                           1. The Availability of Contribution

¶ 26   On appeal, Dragonfly argues that the trial court erred as a matter of law in granting contribution in favor of CHR. Dragonfly maintains that contribution is available under the Act only where there is a basis for comparing fault among joint tortfeasors and where one tortfeasor has paid more than its *pro rata* share of the judgment based upon its relative culpability. Dragonfly argues that, because CHR and Dragonfly were found liable only vicariously (*i.e.*, each was found liable based entirely upon its agency relationship with Henry rather than on any independent negligent conduct of its own), neither party was "at fault," and there is no basis for comparing the relative fault of the parties. Dragonfly further contends that, because Henry's negligent conduct caused the accident and CHR and Dragonfly were each 100% liable for

11

Henry's negligence, CHR did not pay more than its *pro rata* share of common liability even though it paid the entire judgment. We will uphold the trial court's findings of fact unless they are against the manifest weight of the evidence (*Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006)), but we review the trial court's construction of the Act and its ruling on other questions of law *de novo* (*Bueker v. Madison County*, 2016 IL 120024, ¶ 13; *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002)).

¶ 27        Section 2(a) of the Act provides, in relevant part: "[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 2014). However, the next subsection of the Act clarifies that "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." 740 ILCS 100/2(b) (West 2014). "The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability." 740 ILCS 100/3 (West 2014). In other words, a party's "*pro rata* share of the common liability" is "measured by the extent to which his acts or omissions, whatever their nature, proximately caused the injury." *Heinrich v. Peabody International Corp.*, 99 Ill. 2d 344, 349 (1984); see also *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347, 354 (1992) ("the Contribution Act is addressed only to the relative culpability of tortfeasors at fault in fact"); *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 502 (1996) ("Contribution contemplates the distribution of liability for a loss among joint tortfeasors according to each tortfeasor's percentage of relative fault.").

¶ 28	When a principal is held vicariously liable for its agent's conduct (for example, when an employer is held liable for its employee's negligence under the doctrine of *respondeat superior*), the principal is not "at fault in fact." *American National Bank*, 154 Ill. 2d at 354. The principal has not committed any independent tortious act that harmed the plaintiff and that renders the employer directly liable for such harm. Rather, liability for the agent's negligent conduct is imposed upon the principle as a matter of policy based solely upon the principal's relationship with the agent. See, *e.g.*, *Bean v. Missouri Pacific R.R. Co.*, 171 Ill. App. 3d 620, 625 (1988). In such cases, "[o]nly the agent is at fault in fact for the plaintiff's injuries" (*American National Bank*, 154 Ill. 2d at 354); the principal is "blameless" (*id.*). Thus, while the doctrine of vicarious liability may render a principal liable to injured third parties as a matter of policy, the principal "is not thereby considered a wrongdoer and would not be a 'tortfeasor' for purposes of the Contribution Act." *Bean*, 171 Ill. App. 3d at 625; see also *Bristow v. Griffitts Construction Co.*, 140 Ill. App. 3d 191, 194 (1986) ("Under the doctrine of vicarious liability, an employer is held liable to a third party even when the employer is free from all fault. *** [T]he employer is held liable as a matter of policy, but he is not a wrongdoer" or a tortfeasor.). Because the principal's liability is entirely derivative upon the agent's conduct, there is no basis for comparing the principal's "fault" to the agent's fault; the principal is liable to the exact same extent that the agent is liable even though only the agent is at fault in fact. See *Bristow*, 140 Ill. App. 3d at 194 ("The liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one."); see also *Bean*, 171 Ill. App. 3d at 625. Accordingly, although a vicariously liable principal who pays a judgment may seek *indemnification* from its agent, it may not seek *contribution* from the agent. *American National Bank*, 154 Ill. 2d at 354.

13

¶ 29      In this case, CHR, paid the judgments and subsequently sought contribution from Dragonfly. However, like CHR, Dragonfly was found liable for Henry's negligent conduct only vicariously and was not found to be at fault in fact.[4] Thus, Dragonfly stands in the identical position as CHR. Both entities are 100% liable for Henry's negligence by operation of law, but neither party is at fault in fact. The only party shown to be at fault in fact was Henry. (Henry was the only party found to have committed acts or omissions that proximately caused the plaintiffs' injuries.) Thus, for contribution purposes, both Dragonfly and CHR are "blameless" and there is no basis to compare their respective "fault" as required by the Act. Moreover, because Dragonfly and CHR are each 100% liable for the damages caused by Henry, neither would pay more than its *pro rata* share of the common liability even if it paid the entire judgment. Accordingly, under the unique facts presented in this case, (*i.e.*, one principal seeking contribution from another principal where both principals are liable only vicariously for the actions of the same agent who was the sole cause in fact of the accident), the Act provides no remedy.

¶ 30      CHR argues that the trial court correctly found that contribution was available against Dragonfly because (1) during the underlying trial, Dragonfly repeatedly admitted its own negligence (not merely its vicariously liability for Henry's negligence), (2) our appellate court's statement in its decision affirming the jury's verdict that Dragonfly's relationship with Henry "may allow CHR to seek contribution from Dragonfly" is "law of the case," and (3) in *Equistar*

---

[4]As shown in greater detail below, Dragonfly admitted liability and a "unified" negligence with Henry based upon its agency relationship with Henry. CHR has not identified any admissions or evidence presented at trial suggesting that Dragonfly was also directly liable for its own independent acts of negligence. Moreover, in its order granting contribution to CHR, the trial court held that Dragonfly had "engaged in conduct that equally contributed to the cause of the accident at issue" because "Henry, while acting (at least in part) as Dragonfly's agent, operated the truck in such a way that led to the death too people and the catastrophic injury of another." Thus, although the trial court imputed Henry's conduct to Dragonfly under the law of agency, it did hold that Dragonfly had engaged in any negligent conduct that contributed to the accident apart from Henry's conduct. Thus, both the jury in the underlying action and the trial court in the contribution action found Dragonfly liable vicariously, not directly.

14

*Chemicals*, 353 Ill. App. 3d 593, our appellate court held that a vicariously liable defendant may be held responsible for contribution. We address these arguments in turn.

¶ 31    First, although Dragonfly admitted to "negligence" during the trial, it never admitted that it committed any independent tortious act or omission that caused the plaintiffs' injuries. For example: (1) during her opening statement, Henry's and Dragonfly's counsel stated, "my clients have admitted their negligence," (2) during cross-examination, defendant Black, Dragonfly's owner, acknowledged that she had "conceded [her] negligence," (3) outside of the presence of the jury, counsel for Henry and Dragonfly counsel argued that Henry and Dragonfly should be listed together on the jury verdict forms, rather than separately as two individual defendants, because there had been a "united" admission of negligence and liability and "the same admission of negligence and liability" had been made as to both defendants. (Dragonfly's counsel ultimately prevailed in this argument, and Henry and Dragonfly were listed together on the verdict forms), (4) subsequently, in an argument before the court regarding CHR's contribution claim, counsel for Henry and Dragonfly acknowledged that she had admitted "fault" and "all the negligence" as to the plaintiffs' claim on behalf of Dragonfly and Henry, (5) during closing argument, counsel for Henry and Dragonfly stated that "if my clients [Black] and ** Henry could turn back the hands of time and correct their omissions, their mistakes, their actions, they would." After closing arguments, the trial court instructed the jury that Henry and Black, "doing business as Toad L. Dragonfly Express, have admitted they were negligent, and the negligence was a proximate cause of [the] injuries to the plaintiffs."

¶ 32    These admissions of the "united" negligence of Henry and Dragonfly merely acknowledge that Dragonfly was negligent to the same extent that Henry was. Neither Black nor Dragonfly admitted to performing any negligent acts or omissions, aside from Henry's negligent

15

driving, that causally contributed to the accident.[5] CHR has not identified any evidence of such conduct that was presented at trial. Counsel for Henry and Dragonfly argued successfully that Henry and Dragonfly should be listed together on the jury verdict forms as "DeAn Henry and Luann Whitner [*sic*] Black d/b/a/ [*sic*] Toad L. Dragonfly Express" because there had been a "united" admission of negligence and liability and "the same admission of negligence and liability" had been made as to both defendants. This admission of a "unified" negligence of Henry and Dragonfly is consistent with an admission of vicarious liability. See *Bristow*, 140 Ill. App. 3d at 194 ("The liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one."); see also *Bean*, 171 Ill. App. 3d at 625.

¶ 33        Moreover, the jury instructions simply stated that Henry and Black, "doing business as Toad L. Dragonfly Express, have admitted they were negligent, and the negligence was a proximate cause of [the] injuries to the plaintiffs." The jury was not instructed to find Dragonfly negligent if it found that Dragonfly had committed some negligent conduct separate and apart from Henry's negligent driving. Moreover, the jury did not issue a special verdict making any such finding; rather, it merely issued a general verdict against CHR and "DeAn Henry and Luann Whitner [*sic*] Black d/b/a/ [*sic*] Toad L. Dragonfly Express." Similarly, the trial court's ruling on CHR's contribution claim is not based on any finding of independent "fault" or negligence by Dragonfly aside from Henry's fault, which was ascribed to Dragonfly. Although the trial court stated that CHR and Dragonfly "engaged in conduct that equally contributed to the cause of the

---

[5]CHR argues that Dragonfly admitted to such actions or omissions when it failed to answer the final amended complaints filed by the plaintiffs, which contained allegations of independent negligence by Dragonfly. However, the final versions of the Sanders and Taluc complaints alleged that Dragonfly was liable for Henry's conduct under an agency theory and did not allege any independent negligent conduct by Dragonfly. The final version of Sperl's complaint ("Sperl's Fourth Amended Complaint") did allege independent negligent acts or omissions by Dragonfly. However, Dragonfly filed an Answer to that complaint that explicitly denied those allegations. CHR does not point to any specific allegations of negligent conduct by Dragonfly in any of the plaintiffs' operative complaints that were not denied by Dragonfly.

16

accident," it did not identify any independent acts of negligence by Dragonfly. The only example the court provided of any conduct by Dragonfly that "contributed to the cause of the accident" was Henry's operation of the truck while acting as Dragonfly's agent. Thus the trial court, like the jury, appeared to predicate Dragonfly's "fault" and liability entirely upon Henry's conduct under a theory of vicarious liability.

¶ 34    In sum, despite its many admissions of "united negligence" with Henry, Dragonfly never admitted that it was at fault in fact for the accident, and neither the jury nor the trial court so held.[6]

¶ 35    CHR also argues that the availability of contribution from Dragonfly was established as "law of the case" in our appellate court's previous decision affirming the jury's verdict against CHR. We disagree. "[T]he law of the case doctrine bars relitigation of an issue previously decided in the same case." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006); see also *First Chicago Insurance Co. v. Molda*, 2015 IL App (1st) 140548, ¶ 34. However, the issue of whether CHR could seek contribution from Dragonfly was not decided in the prior appeal. That appeal addressed only two issues: (1) whether the jury had properly found that Henry was acting as CHR's agent at the time of the accident and (2) whether the trial court had properly rejected CHR's proposed verdict form which would have asked the jury to allocate fault between Henry, Dragonfly, and CHR under section 2-1117 of the Code. The issue of contribution was not raised in the prior appeal because it had not been decided during the trial proceedings that were the subject of the appeal. As noted, the trial court had severed CHR's contribution claim prior to trial and CHR did not object when the jury was dismissed without deciding CHR's contribution

---

[6]Assuming *arguendo* that the trial court's contribution judgment included a finding that Dragonfly was at fault in fact for the accident, such a finding would be against the manifest weight of the evidence. The contribution action was based entirely upon the evidence presented during the underlying trial, and CHR identifies no evidence presented at trial of any independent acts of negligence by Dragonfly.

17

claim. CHR's contribution claim was litigated and decided by the trial court only after our appellate court issued its prior decision in this case. Thus, our appellate court did not and could not have decided the contribution issue during the prior appeal. Although our appellate court's prior decision noted in passing that Dragonfly's relationship with Henry "may" allow CHR to seek contribution from Dragonfly, that statement was merely *obiter dictum* that cannot serve as law of the case.

¶ 36   CHR also argues that, in *Equistar Chemicals*, our appellate court "reject[ed] *** [the] argument that a vicariously liable defendant cannot be held responsible for contribution." In *Equistar Chemicals*, the plaintiff was injured while working at defendant Equistar's premises when he was struck by a truck driven by one of the plaintiff's coworkers (Bromberek). The plaintiff sued both Bromberek and Equistar for negligence. The plaintiff alleged that Bromberek was negligent in his driving and that Equistar was negligent "in connection with the condition of the premises on which the injuries occurred." *Equistar Chemicals*, 353 Ill. App. 3d at 595. Equistar filed a third-party claim for contribution against Bromberek and BMW Constructors, Inc. (BMW), Bromberek's and the plaintiff's employer. *Id.* Equistar's complaint alleged that BMW was both directly liable for its own alleged negligence and vicariously liable for Bromberek's alleged negligence. Bromberek moved to dismiss Equistar's complaint because the complaint alleged that Bromberek and the plaintiff were both employees of BMW at the time of the accident and the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2002)) provides the exclusive remedy for workplace negligence actions filed against coemployees. *Equistar Chemicals*, 353 Ill. App. 3d at 595.  Before the trial court ruled on Bromberek's motion, Bromberek settled with the plaintiff for $5000 in exchange for a full and complete release of Bromberek and his insurer. The settlement agreement did not release BMW. Thereafter, BMW

moved for summary judgment as to Equistar's contribution claim, arguing (*inter alia*) that the plaintiff's settlement with Bromberek extinguished BMW's purported vicarious liability for Bromberek's negligence. *Id.* at 596.The trial court granted BMW's motion.

¶ 37     Our appellate court reversed. Our appellate court began its analysis by noting that section 2(c) of the Act provides that a settlement between a plaintiff and one of several joint tortfeasors " 'does not discharge any of the other tortfeasors from liability *** unless its terms so provide.' " *Id.* at 600 (quoting 740 ILCS 100/2(c) (West 1994)). Our appellate court noted that the settlement between the plaintiff and Bromberek did not purport to release BMW. Although our appellate court acknowledged that prior supreme court and appellate court precedent held that a settlement with an agent extinguishes the principal's vicarious liability (see, *e.g.*, *American National Bank*, 154 Ill. 2d at 355; *Bristow*, 140 Ill. App. 3d at 191-92), it ruled that the settlement at issue should not be construed as releasing BMW for several reasons. First, our appellate court found *American National Bank* and *Bristow* distinguishable because each of those cases involved a direct action against a principal in quasi-contract (*i.e.*, a claim for implied indemnification) rather than a contribution claim brought by a third-party plaintiff. *Equistar Chemicals*, 353 Ill. App. 3d at 603. Thus, in *American National Bank* and *Bristow*, the dismissal of the principal upon the settlement with the agent "would affect only the plaintiff's own recovery, potentially limiting it to the amount of the settlement." *Id.* By contrast, in Equistar's case, treating the plaintiff's settlement with Bromberek as extinguishing BMW's vicarious liability would bar Equistar's contribution claim and force Equistar to pay more than its fair share for the plaintiff's injuries. *Id.* Our appellate court held that this would "contraven[e] *** the Contribution Act," which seeks to "eliminat[e] inequity between joint tortfeasors." (Internal quotation marks omitted.) *Id.*

19

¶ 38    Second, our appellate court held that the "significant" and "dispositive" difference between Equistar's case and *American National Bank* and *Bristow* was the application of the Workers' Compensation Act in Equistar's case. *Equistar Chemicals*, 353 Ill. App. 3d at 597-98, 603-04. The Workers' Compensation Act "subsume[s] the negligence of a coworker into the [workers'] compensation claim against the employer" and "permit[s] only one simplified recovery of prescribed damages payable to the injured employee without consideration of fault." *Id.* at 598. The Workers' Compensation Act bars actions by a worker injured on the job against an allegedly negligent coworker acting within the scope of his employment. *Id.* The Workers' Compensation Act also bars contribution claims by any party against allegedly negligent co-workers. *Id.* Accordingly, there was "no legal basis on which any claim of negligence could be maintained against Bromberek by either [the plaintiff] or Equistar." *Id.* For that reason, our appellate court concluded that allowing the plaintiff's settlement with Bromberek to release the employer [BMW] would "do[ ] an end run around the Workers' Compensation Act." *Id.* Our appellate court noted that these "dispositive" considerations were not implicated in *American National Bank* or *Bristow* because the plaintiffs in those cases "were neither employed by the principal nor coworkers of the person(s) whose actions formed the basis for the vicarious liability claim." *Id.* at 603-04. Accordingly, there was "no need to factor the Workers' Compensation Act into the analysis" in deciding those cases. *Id.* at 604. Our appellate court found that the "interplay" between the Workers' Compensation Act and the Act is what distinguished the case before it from *American National Bank* and *Bristow. Id.* at 597.

¶ 39    *Equistar Chemicals* is distinguishable from the case at bar in several material respects. First, this case does not require the application of the Workers' Compensation Act. The plaintiffs in the underlying tort actions were neither employees of Dragonfly nor coworkers of the person

20

whose actions formed the basis of the vicarious liability claim against Dragonfly (*i.e.*, Henry). Thus the issue that our appellate court identified as "dispositive" in *Equistar Chemicals* is wholly absent here. Second, as explained in greater detail below, this case does not involve the construction and application of a settlement agreement under the Act, as did *Equistar Chemicals.*

¶ 40        Third, *Equistar Chemicals* involved a contribution action brought by a tortfeasor (Equistar) against a principal (BMW) who was vicariously liable for the negligence of *a separate, independent tortfeasor* (Bromberek). Equistar owned the premises where the accident occurred, and it was alleged to have engaged in negligent conduct "in connection with the condition of the premises." Bromberek, on the other hand, was alleged to have acted negligently while driving the truck that struck the plaintiff. Equistar's negligent conduct was therefore entirely separate and distinct from Bromberek's negligent conduct, which formed the basis for BMW's vicariously liability. Accordingly, by seeking contribution from BMW, Equistar was seeking contribution for the fault of a separate tortfeasor (Bromberek) who played a role in causing the plaintiff's injuries that was separate and distinct from the role played by Equistar. In the instant case, by contrast, there is only one tortfeasor who is at fault in fact (Henry), and CHR and Dragonfly are both vicariously liable for that same tortfeasor's negligent conduct. Thus, by seeking contribution against Dragonfly, CHR is seeking contribution for conduct for which it is entirely responsible. In effect, CHR is seeking contribution for the fault or relative culpability of its own agent. The Act does not authorize such a claim. See *American National Bank*, 154 Ill. 2d at 354. Moreover, because its agent was 100% responsible for the accident, CHR would not be required to pay more than its fair share of liability if its contribution claim were barred.[7]

---

[7]Equistar, by contrast, was not 100% at fault for the harm caused to the plaintiff in *Equistar Chemicals*. Bromberek was also at fault in fact. Thus, unlike CHR, Equistar would have been forced to pay more than its fair share of the common liability if its contribution claim were barred.

¶ 41    Our appellate court expressly limited its decision in *Equistar Chemicals* to the particular facts presented in that case, which included: (1) a settlement with an agent that did not expressly release the agent's principal from liability, (2) an employment relationship between the plaintiff and one of the defendants, which required the court to apply the Workers' Compensation Act, and (3) a third party tortfeasor seeking contribution for the independent negligent acts of a separate tortfeasor. *Equistar Chemicals*, 353 Ill. App. 3d at 597. None of those facts are presented in this case. Accordingly, *Equistar Chemicals* is inapposite and does not support CHR's argument.[8]

¶ 42    In sum, we hold that a principal who is vicariously liable for the negligent conduct of its agent may not seek contribution under the Act against another principal who is vicariously liable for the same conduct of the same agent where: (1) the agent is the only tortfeasor who is at fault in fact; and (2) there is no evidence that either of the principals was at fault in fact. One of the main purposes of the Act is to allocate the plaintiff's damages among the parties fairly "based upon their relative degree of fault." *Corley v. James McHugh Construction Co.*, 266 Ill. App. 3d 618, 624 (1994); see also *Orejel v. York International Corp.*, 287 Ill. App. 3d 592, 599 (1997) (ruling that the Act was enacted to encourage settlements and "allow[ ] for an equitable sharing of damages among tortfeasors according to their relative culpability"). Damages cannot be apportioned according to the parties' relative fault when there is only one torfeasor at fault in fact. In this case, Henry was the only tortfeasor whose negligent acts or omissions caused the plaintiffs' damages. Neither CHR nor Dragonfly were at fault in fact, and both CHR's and

---

[8]*Ramsey v. Morrison*, 175 Ill. 2d 218 (1997), another case upon which CHR relies, also involved an employment relationship between the underlying plaintiff and the contribution defendant. Moreover, as in *Equistar Chemicals*, the contribution claim was brought by a third party tortfeasor against the plaintiff's employer, which would have been vicariously liable for the alleged negligent driving of the plaintiff's coworker. Thus, in *Ramsey*, as in *Equistar Chemicals* (and unlike this case), the fault of the party seeking contribution was separate and distinct from the fault of the agent, and both parties separately contributed to the plaintiff's injuries.

22

Dragonfly's liability was entirely derivative of Henry's conduct. Thus, CHR is not entitled to contribution from Dragonfly under the Act.

¶ 43 The dissent suggests that *American National Bank* supports a contrary conclusion. *Infra* ¶ 64. As the dissent notes, near the end of its opinion in *American National Bank*, our supreme court observed, "[p]arenthetically," that the Act should apply to settlements between a principal and a third-party plaintiff because "[s]uch a settlement has the effect of creating, in the blameless principal, an interest indistinguishable from the contribution interests of the 'other tortfeasors' at fault in fact." *American National Bank*, 154 Ill. 2d at 355. In my view, however, the dissent takes this statement out of context and misinterprets it.

¶ 44 As an initial matter, because *American National Bank* addressed the effect of a settlement between an *agent* and a plaintiff, the supreme court's passing, "parenthetical" statement regarding the potential effect of a settlement between a *principal* and a plaintiff is merely *obiter dictum* that is not binding law.

¶ 45 Moreover, when read in its proper context, the statement at issue does not suggest that contribution should be available in the case at bar. Immediately before making the statement at issue, the supreme court had adopted the *Bristow* rule that "any settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability," regardless of whether the settlement had explicitly released the principal. *Id.* The supreme court adopted this rule as "means to rationally reconcile concerns regarding the effect of settlements in the quasi-contractual [*i.e.*, vicarious liability] context given [the] viability of implied indemnity." *Id.* Specifically, the supreme court was concerned that, "if implied indemnity against an agent is not barred by a plaintiff's settlement with the agent, there is little to encourage the agent's desire to settle. [Citation.] Yet, if implied indemnity is precluded by such a settlement in which the

23

plaintiff retains all legal claims against the principal, the settlement defeats the purpose of retaining implied indemnity." *Id.* at 354. These concerns do not arise when a *principal* settles with the agent. Accordingly, the supreme court stated that, where a principal settles with a plaintiff, the Act's rule governing settlements (rather than the *Bristow* rule) should apply, *i.e.*, "[t]he release of the agent from liability to the plaintiff, as well as preservation of the principal's implied indemnity claim, depends *** on the agent's being named in the settlement." *Id.* at 355; see also 740 ILCS 100/2(e) (West 2014). Thus, when our supreme court stated that "the Contribution Act should *** apply" in such circumstances, it was referring to the Act's rule regarding the effect of *settlements*, and the application of that rule to a settling principal's indemnification claim against its agent. Our supreme court was *not* suggesting that, where a blameless principal settles with a plaintiff, the principal should be able to obtain contribution from the agent. Any such suggestion would contradict the primary bases for the court's holding in *American National Bank*, namely that (1) "the Contribution Act is addressed only to the relative culpability of tortfeasors at fault in fact" and is therefore "ill-suited to the task of addressing quasi-contractual relationships" like those of principal and agent; and (2) "[i]n cases of vicarious liability, there is only a basis for indemnity, not for apportionment of damages [or comparison of fault] as between the principal and agent." (Internal quotation marks omitted.) *American National Bank*, 154 Ill. 2d at 354. *American National Bank* clearly suggests that contribution should not be available under the facts presented in this case (two principals, both of whom are entirely vicariously liable for the negligence of the same agent, where the agent was the only tortfeasor at fault in fact) because there is no basis to compare fault or apportion damages between the parties. See *id.* at 353-55; see also *Bean*, 171 Ill. App. 3d at 625; *Bristow*, 140 Ill. App. 3d at 194.

24

¶ 46    The dissent also suggests that our holding in this case is "unjust" and undermines the Act's goals of "equitably enforcing damages among defendants and encouraging settlements." *Infra* ¶¶ 64, 70. However, as our supreme court has made clear, the Act promotes the equitable sharing of damages *among tortfeasors at fault in fact according to their relative culpability.* *Heinrich*, 99 Ill. 2d at 349; *American National Bank*, 154 Ill. 2d at 354. As noted, there is no basis to compare fault or assign relative culpability between CHR and Dragonfly in this case; neither party is at fault in fact, and each is entirely vicariously liable for Henry's negligence. Thus, the Act cannot apply. Although it might seem unjust to hold CHR entirely liable for all the damages caused by Henry, we are bound by the text of the Act and by our supreme court cases interpreting it. It is up to the legislature to create a right of contribution among two or more defendants who are each vicariously liable for the acts or omissions of the same agent. As currently written, the Act provides no such remedy because it explicitly predicates the right of contribution on the comparison of fault among separate tortfeasors, each of whom causally contribute to the plaintiffs' injuries. 740 ILCS 100/3 (West 2014); see also *Heinrich*, 99 Ill. 2d at 349; *American National Bank*, 154 Ill. 2d at 354.[9] We cannot contravene the Act's plain language and our supreme court's construction of the Act in order to advance our own sense of fairness or to promote the policy of encouraging settlements among tortfeasors.

¶ 47    By rejecting CHR's contribution claim in this case, we are not holding that a vicariously liable defendant may never be held liable for contribution. To the contrary, a joint tortfeasor may obtain contribution against a defendant who is vicariously liable for the negligence of its agent so

---

[9]Our research has uncovered two Restatement sections that authorize contribution among two or more blameless principals who are each vicariously responsible for the conduct of a common agent. See Restatement (First) of Restitution § 99 (1037), and Restatement (Second) of Agency § 317(A)(1) (1958). However, no Illinois court has adopted either of these Restatement provisions, and the legislature did not enact a similar provision in the Act. To the contrary, our supreme court's decision in *American National Bank* and decisions issued by our supreme court and our appellate court in other cases appear to be incompatible with these Restatement sections.

long as the tortfeasor and the agent are both at fault in fact (*i.e.*, so long as the tortfeasor seeking contribution is independently at fault and is not merely vicariously liable for the same agent's negligence).

¶ 48   2. Whether CHR and the Plaintiffs Executed a "Settlement" That Barred Contribution

¶ 49   Because we reverse the trial court's contribution award for the reasons stated above, we do not need to address Dragonfly's alternative argument that CHR was barred from seeking contribution from Dragonfly pursuant to section 2(e) of the Act. However, if we were to address that argument, we would reject it. Section 2(e) provides that "[a] tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e) (West 2014). Accordingly, a joint tortfeasor who wishes to settle with the plaintiff must secure the plaintiff's release of the other tortfeasor in order to preserve its contribution rights against that tortfeasor. *State Farm Fire & Casualty Co. v. Jones*, 329 Ill. App. 3d 219, 222 (2002); see also *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992) (holding that a defendant who settled with the plaintiff was barred from seeking contribution from other defendants who were not parties to the settlement agreement, and ruling that "[a] party that settles may seek contribution only from parties whose liability was extinguished by that same settlement"). Dragonfly argues that CHR was barred from seeking contribution against Dragonfly under section 2(e) because CHR entered into "settlements" with the plaintiffs that did not release CHR from liability.

¶ 50   Dragonfly's argument fails for a simple reason: CHR did not "settle" with any of the plaintiffs. Rather, it entered into satisfactions of judgment with each of the plaintiffs by fully paying the judgments entered in favor of each plaintiff. Each of the documents at issue was

26

entitled a "Satisfaction of Judgment," and the trial court acknowledged them to be satisfactions, not settlements. They could not have been settlements because they were executed after the judgments were entered and because CHR paid the judgments in full and did not condition payment upon the plaintiffs offering any consideration aside from discharging the judgments. Thus, section 2(e) did not apply, and CHR was not required to secure the plaintiffs' express release of Dragonfly in order to preserve its contribution rights against Dragonfly. In any event, the satisfactions obtained by CHR in exchange for its full payment of the judgments extinguished any potential liability of Dragonfly to the plaintiffs, as contemplated by section 2(e). See *Solimini v. Thomas*, 293 Ill. App. 3d 430, 436 (1997).[10]

¶ 51                    3. Whether Postjudgment Interest is Awardable under the Act

¶ 52        Dragonfly also argues that the trial court erred by including in its contribution award the interest that CHR paid on the underlying judgment. Dragonfly maintains that the Act "limits contribution to tort liability," whereas a party's liability for interest "does not arise out of tort, but rather is statutory, and arises out of the judgment." For this reason, Dragonfly contends that interest is not a "common liability" awardable under the Act.

¶ 53        Because we reverse the trial court's contribution award in its entirety, we do not need to address Dragonfly's argument on this issue. However, even if we were to address it, we would reject it. Postjudgment interest accrued on the damages is awarded under the interest on judgment provision of the Code of Civil Procedure as a matter of law. 735 ILCS 5/2-1303 (West 2010); see also *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App

---

[10]Although the "Satisfaction of Judgment" filed by plaintiff Susan Sperl directed the clerk to "cancel and discharge the judgment as to [CHR] only" and stated that it did "not release or satisfy the judgment as to DeAn Henry of Luann Whitner-Black [*sic*] d/b/a Toad L. Dragonfly Express," this does not change the fact that CHR and Sperl executed a satisfaction rather than a settlement. As a matter of law, the full satisfaction provided by CHR discharged all of the defendants' liability to Sperl, including Dragonfly's. See *Solimini*, 293 Ill. App. 3d at 436.

(1st) 132020, ¶ 62 (ruling that "the imposition of statutory interest from the date the final judgment was entered is mandatory"). Statutory interest is " 'made a part of the judgment' " under section 2-1303. *Travelers Insurance Co. v. Robert R. Anderson Co.*, 112 Ill. App. 3d 812, 816 (1983). The jury verdicts were entered against the defendants jointly and severally. Accordingly, if CHR were entitled to contribution, it would be entitled to collect any amount that it paid in excess of its *pro rata* share of the judgment based on its relative culpability, plus any postjudgment interest that had accrued on any such amount from the time the underlying judgment was entered until CHR satisfied the judgment.

¶ 54                                    4. CHR's Cross-Appeal

¶ 55         In its cross-appeal, CHR argues that trial court's contribution award should have been larger. First, CHR argues that the trial court should have awarded CHR the entire amount of the judgments and interest that CHR paid because (1) our appellate court previously found that CHR was not at fault, whereas Dragonfly admitted fault during the trial court proceedings, and (2) governing federal regulations rendered Dragonfly directly (and not merely vicariously) liable for 100% of the damages caused by Henry. In the alternative, CHR maintains that because Henry's portion of the common liability is "uncollectable," Dragonfly is liable for "its own liability based on fault, plus one half of any share of fault attributable to Henry, including applicable post-judgment interest already paid by [CHR]."

¶ 56         We do not find these arguments to be persuasive. As noted above, Dragonfly did not admit its own independent "fault" at trial; it merely admitted that it was fully responsible for Henry's negligence as a matter of law. Neither CHR nor Dragonfly was at fault in fact. Therefore, their "fault" cannot be compared for purposes of allocating responsibility for damages under the Act.

28

¶ 57 Moreover, contrary to CHR's contention, the governing federal regulations do not make Dragonfly directly liable for Henry's negligent conduct. Leases between tractor-trailer owners like Henry and federally licensed motor carriers lessees like Dragonfly are governed by 49 C.F.R. § 376.12(c)(1) (2004). That regulation provides, in relevant part, that leases between authorized motor carriers and vehicle owners "shall provide that the *** carrier lessee shall have *exclusive possession, control, and use* of the [leased] equipment for the duration of the lease," and that the carrier lessee "*shall assume complete responsibility for the operation of the equipment for the duration of the lease*." (Emphasis added.) *Id.* Moreover, another governing regulation defines "employee" broadly as "a driver of a commercial motor vehicle (*including an independent contractor while in the course of operating a commercial motor vehicle*), a mechanic, and a freight handler." (Emphasis added.) 49 C.F.R. § 390.5 (2004). Courts have interpreted these provisions as rendering the lessee motor carrier *vicariously* liable for any injuries caused to a third party by the operation of the leased vehicle.[11] However, our research has not uncovered any case holding or implying that a motor carrier lessee is *directly* liable for such injuries. As noted above, Dragonfly admitted that it was 100% vicariously liable for the injuries and deaths caused by Henry's negligent operation of the leased vehicle. Accordingly, the

---

[11]*Jackson v. O'Shields*, 101 F.3d 1083, 1086 (5th Cir. 1996) (ruling that, if there is an existing lease between an ICC-authorized carrier and an owner of leased equipment and the equipment bears the carrier's ICC placard, then the driver of the equipment will be deemed to be the carrier's "statutory employee" and the carrier will be held "vicariously liable for injuries resulting from the use of the leased equipment"). See also *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 38-39 (Tex. App. 2002) ("Because under the [Federal Motor Carrier Safety Regulations] interstate motor carriers have both a legal right and duty to control leased vehicles operated for their benefit, the regulations create a statutory employee relationship between the employees of the owner-lessors and the lessee-carriers," and "an interstate [motor] carrier is vicariously liable as a matter of law" under the governing federal regulations for the negligence of its statutory employee drivers); *Castro v. Budget Rent-A-Car System, Inc.*, 65 Cal. Rptr. 3d 430, 436 (Ct. App. 2007) ("The control and responsibility requirements under federal law render lessee carriers vicariously liable, notwithstanding traditional principles of agency, for injuries sustained by third parties resulting from the negligence of the drivers of leased vehicles." (Internal quotation marks omitted); *Aequicap Insurance Co. v. Canal Insurance Co.*, 693 S.E.2d 863, 866-67 (Ga. Ct. App. 2010).

federal regulation at issue does not change our analysis as to CHR's contribution claim against Dragonfly.

¶ 58    We also reject CHR's argument that it is entitled to contribution from Dragonfly for Henry's purportedly "uncollectable" share of the contribution liability. As CHR notes, section 3 of the Act provides that, if the obligation of one of the joint tortfeasors is uncollectable (*i.e.*, if one of the joint tortfeasors is unable to pay his *pro rata* share of the common liability based upon his or her relative culpability), "the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability." 740 ILCS 100/3 (West 2014). Applying this provision, CHR argues that, because CHR and Dragonfly stipulated that Henry had no personal assets from which any judgment against her could be collected, CHR and Dragonfly should have shared Henry's portion of the common liability, which was "uncollectable."

¶ 59    We disagree. As noted above, CHR is not entitled to contribution because Henry was the only party at fault in fact, and CHR was 100 vicariously liable for Henry's negligent conduct. When CHR paid the damages caused by Henry's negligence, it fully discharged Henry's liability to the plaintiffs based upon Henry's relative culpability (100%). As CHR's agent, Henry had no contribution liability to CHR. See *American National Bank*, 154 Ill. 2d at 354 (ruling that a party that is vicariously liable for the negligent conduct of its agent may not obtain contribution from the agent). Thus, Henry's share of common liability was not "uncollectable"; it was nonexistent. Put another way, for purposes of contribution, Henry was not a separate tortfeasor from CHR. CHR was entirely liable for Henry's obligation by operation of the law of agency. Thus, when CHR fully satisfied the judgment, no portion of the judgment remained "uncollectable" or subject to contribution.

30

¶ 60                                    CONCLUSION

¶ 61        For the foregoing reasons, we reverse the judgment of the circuit court of Will County awarding contribution to CHR, and we remand the case to the circuit court for further proceedings.

¶ 62        Reversed; cause remanded.

¶ 63        JUSTICE SCHMIDT, dissenting.

¶ 64        I agree with the majority's analyses on all issues except the dispositive one: CHR's right to contribution from Dragonfly. The majority's hyper-technical construction of the Act leads to an absurd and unjust result certainly not intended by the legislature. To a large extent, the majority hangs its hat on *American National Bank*, 154 Ill. 2d 347. *Supra* ¶ 27. The issue in *American National Bank* was whether the Act effectively abolished actions for common law implied indemnity for situations involving vicarious liability. The supreme court concluded it did not. *Id.* at 348. The supreme court no doubt stated that reconciliation of certain concerns begins with recognition that the Act is addressed only to the relevance of culpability of tortfeasors at fault in fact. *Id.* at 354. However, the supreme court went on to note: "Parenthetically, we also agree with those commentators that settlements between the principal and the plaintiff merit different consideration. [Citation.] Such a settlement has the effect of creating, in the blameless principal, an interest indistinguishable from the contribution interests of the 'other tortfeasors' at fault in fact. [Citation.] The Contribution Act should therefore apply." *Id.* at 355.

¶ 65        This is such a case that "merit[s] different consideration." *Id.* Additionally, the Act states: "[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them." 740 ILCS 100/2(a) (West 2014). Both CHR and Dragonfly qualify as persons subject to liability in tort

31

arising out of the same injury to persons or property, et cetera. Because contribution addresses payment of a common debt, the Act requires only that "the persons seeking contribution and the persons from whom contribution is sought be potentially capable of being held liable to the plaintiff in a court of law or equity." *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 529 (1995).

¶ 66        If the Act applies only to tortfeasors, CHR and Dragonfly are vicarious tortfeasors. Their tort liability stems from the legal maxim, *qui facit per alium facit per se*, meaning "he who acts through another does the act himself." See 1 William Blackstone, Commentaries *429-30. Although Henry drove the semi that caused this accident, her principals are liable for her tort as if they were driving. Both principals shared a common debt which CHR discharged to Dragonfly's benefit.

¶ 67        With respect to relative culpability under the Act, I believe the majority confuses principals of joint and several liability with the concept of *pro rata* share under the Act. The majority says the Act provides no remedy to blameless principals in cases such as this. This is so, says the majority, because the blameless principal has no relative culpability. *Supra* ¶¶ 28-29.

¶ 68        Henry, CHR, and Dragonfly, under principles of joint and several liability, were each 100% liable to pay the judgment in this case. That does not mean that we have a 300% pie to slice up when talking about *pro rata* shares. While the law is crystal clear that the principal has no right of contribution against his agent, there is no reason in a case such as this (where two principals share a common agent) that the two blameless principals should not share the common liability. As the majority points out, both principals are blameless when it comes to fault in fact. That makes them equally responsible for purposes of contribution. The theory is that as between two tortfeasors, the contribution is not a recovery for the tort but enforcement of an equitable duty to share liability for the wrong done. *Doyle v. Rhodes*, 101 Ill. 2d 1, 14 (1984). Neither

32

equity nor common sense supports the refusal to apply that same principal to two vicarious tortfeasors (principals). Therefore, pursuant to the Act, CHR and Dragonfly have equal relative culpability; their *pro rata* shares are each 50%. The trial judge did not err in awarding judgment to CHR against Dragonfly for 50% of CHR's payment.

¶ 69　　　　In addressing this dissent, the majority observes that our supreme court "was not suggesting that, where a blameless principal settles with a plaintiff, the principal should be able to obtain contribution from the agent." (Emphasis omitted.) *Supra* ¶ 45. I never said it was. The case before us involves the issue of contribution between two blameless, yet equally liable, principals.

¶ 70　　　　This interpretation of the Act serves its two primary policies: equitably enforcing damages among defendants and encouraging settlements. *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 365 (2005). Furthermore, the majority's rule reduces the incentive in cases like this for one of the principals to step up and quickly pay a judgment or, for that matter, settle a case before the trial court enters judgment. Under the majority's rule, the paying principal would not be entitled to any rights or remedies against a coprincipal that the Act provides.

¶ 71　　　　For these reasons, I respectfully dissent and would affirm the trial court's judgment.